MATTHEW C. BASSETT      6443
Law Office of Matthew C. Bassett Esq.
3345 Akala Dr.
Kihei Hawai'i  96753
Tel. (808) 793-3768
Email:    mattbassettesq@gmail.com

Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF HAWAI'I

| | |
|---|---|
| MATTHEW C. BASSETT,<br><br>                    Plaintiff,<br><br>     vs.<br><br>HAWAI'I DISABILITY RIGHTS CENTER, a Hawaii nonprofit corporation, LOUIS ERTESCHIK ESQ, personally, and in his capacity as Executive Director Hawaii Disability Rights Center, ANN E. COLLINS, personally and in her capacity as Programs Director of Hawaii Disability Rights Center, JANE MIYAHARA, ANDREW GRANT, MARYELLEN MARKLEY, SHAWN ANTHONY LUIZ ESQ., JOHN DOES 1-10 and JANE DOES 1-10,<br><br>                    Defendant. | CIVIL NO.<br><br>COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF<br><br>1.  SEXUAL DISCRIMINATION TITLE VII OF THE CIVIL RIGHTS ACT OF 1964<br>2.  RETALIATION FOR REPORTING SEXUAL DISCRIMINATION – PUBLIC POLICY<br>3.  SEXUAL HARASSMENT AND HOSTILE WORK ENVIRONMENT<br>4.  FAILURE TO PREVENT DISCRIMINATION AND HARASSMENT<br>5.  WHISTLEBLOWER RETALIATION IN VIOLATION OF HRS §378-62, §378-63 *et-al*<br>6.  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS<br>7.  DEFAMATION |

8. WRONGFUL TERMINATION-SEXUAL DISCRIMINATION RETALIATION FOR REPORTING SEXUAL DISCRIMINATION

9. WRONGFUL TERMINATION-WHISTLEBLOWERS PROTECTION ACT, HRS 21 §378-62, §378-63 *et-al*

10. THEFT OR BRIBERY CONCERNING PROGRAMS RECEIVING FEDERAL FUNDS -18 U.S. CODE § 666- PRIVATE ATTORNEY GENERAL DOCTRINE

11. BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING – (PRIVATE ATTORNEY GENERAL DOCTRINE

12. LEGAL MALPRACTICE-BREACH OF FIDUCIARY DUTY

EXHIBIT "A," "B"; SUMMONS

**JURY TRIAL DEMANDED**

## COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Matthew C. Bassett ("Plaintiff" or "Mr. Bassett"), hereby

demanding a jury trial, alleges on personal knowledge, information and belief

2

hereby files this Complaint against the above-named Defendants, and in support thereof alleges the following:

## II. **JURISDICTION AND VENUE**

3.        This Court has original jurisdiction in this action pursuant to 28 U.S.C.  Sections 1331 and 1343 and 42 U.S.C. Section 2000e-5, inasmuch as the matter in controversy is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. This District possesses venue of this matter pursuant to 42 U.S.C. Section 2000e-5(f). The jurisdiction of this Court is invoked to secure protection and redress deprivation of rights guaranteed by federal law, which rights provide for injunctive relief and other relief for illegal employment discrimination. The amount in controversy in this action does not exceed the jurisdictional limits of this Court.

4.        This action also arises under the Whistleblower Protection Act and provisions.  This Court has jurisdiction to award declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rules 57 and 58 of the Federal Rules of Civil Procedure.   Jurisdiction is invoked pursuant to 28 U.S.C. § 1331, as well as under 28 U.S.C. § 1343(a)(4), and 28 U.S.C. §§ 2201 and 2202. This suit is authorized and instituted pursuant to the above federal statutes. This court has

ancillary jurisdiction of the state law claims because they are sufficiently related to the federal claims.

5.      Venue is proper under 28 U.S.C. § 1391 because Defendant's principal place of business is in this district. Venue is also proper because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and all individual defendants reside in this judicial district.

## II. EXHAUSTION OF REMEDIES

6.      On or around July 1st, Plaintiff first filed his complaint with the Equal Employment Opportunity Commission, hereinafter the "EEOC" complaining of discrimination based on sex.

7.      On August 17th 2018, Plaintiff filed his charge of discrimination with the EEOC Administration against the Defendant Hawaii Disability Rights Center (hereinafter also HDRC), alleging violations of Title VII of the Civil Rights Act of 1964, including violations of sex discrimination, sexual harassment and retaliation for reporting sex discrimination, sexual harassment and retaliation for refusal to submit to sexual harassment, EEOC Case No. 486-2018-00423.

8.      Plaintiff Bassett notified Executive Director, Defendant Erteschik on July 2nd, 2018 that he had filed with the EEOC for sex discrimination against

HDRC.  Defendant Erteschik continued with his retaliation against Plaintiff and immediately asked Plaintiff if he "wants to be fired or if he wanted to quit."

9.      Plaintiff Bassett was thereafter discharged/separated from HDRC on July 13th, 2018, and thereafter, Plaintiff filed his first Notice of Retaliation with the EEOC, EEOC Case No. 486-2018-00423.

10.      On September 4, 2018, the Hawaii Civil Rights Commission filed a notice in the matter of  *Matthew C. Bassett v. Hawaii Disability Rights Center*, and delivered said Notice of Charge of Discrimination to HDRC, FEPA No. 20303, EEOC No. 486-2018-00423,.

11.      On September 6th 2018 the EEOC delivered a Right to Sue letter to Plaintiff in EEOC Case No. 486-2018-00423 giving Plaintiff's his right to file a civil suit in federal district court, Pursuant to 29 C.F.R. Sec. 1614.107(a)(3), herein attached as exhibit "A."

12.      On October 10th 2018, the Hawaii Civil Rights Commission delivered a right to sue letter to Plaintiff in FEPA Case No. 20303, EEOC No. 486-2018-00423, herein attached as exhibit "B."

13.      Plaintiff Bassett file his complaint for an action under Title VII in Federal Court within 90 days after receiving Plaintiff's "right to sue" authorization letter.

III. **PARTIES**

14.        **Plaintiff MATTHEW C. BASSETT** (hereinafter "Plaintiff Bassett" or "Plaintiff") resides in Maui County, Hawaii. Plaintiff has resided in Hawaii with his wife, since 1994.

15.        He was hired by Defendant HAWAIʻI DISABILITY RIGHTS CENTER (hereinafter "HDRC"), as the "Maui Managing Attorney" the summer of 1998 or there about. Plaintiff Bassett worked in the Honolulu office through the summer of 2000.

16.        Plaintiff Bassett resided in Honolulu, Bassett he worked in the Honolulu office as a "staff attorney." Plaintiff Bassett was the lead litigation attorney for the agency.

17.        Plaintiff had full case management of major litigation including all class action lawsuits.

18.        After the summer of 2000, Plaintiff Bassett was told by Executive Director Gary Smith, that a move to Island of Maui was mandatory if Plaintiff wanted to remain the Maui attorney.  This was per the HDRC's board's desire to have a staff member on the island of Maui. The move carried considerable expense and some hardship. The move required Plaintiff's wife, Garilyn Bassett, to resign her position at a Federal Savings and Loan and to physically move to the island of

Maui, giving up being close to her family. The family resides in Waipahu. Plaintiff had hoped to improve Plaintiff's working conditions as he would be able to work out of the home and avoid office politics.

19.     On or around fiscal year 2005 Plaintiff Bassett Plaintiff asked for a promotion and was promoted to Litigation Director per his request.

20.     Due to the administrations inability to hire sufficient competent litigation attorneys in the Honolulu office, Plaintiff Bassett was therefore asked to handle all state-wide litigation from Maui.

21.     The temporary request to handle all litigation from Maui doubled Plaintiff's litigation workload. The state wide territory was never intended to be part of Plaintiff's original duties as most cases originate on Oahu, wherein Plaintiff just moved from.

22.     Plaintiff agreed to fill in, until sufficient qualified litigation staffing was acquired in the Honolulu office. The acquisition of competent long term staff never materialized.

23.     The agency administration had never made any serious effort to recruit litigation attorneys for the Honolulu office. The Executive Directors, including Defendant Erteschik decided it would be much easier for them to just let Plaintiff, the Maui Litigation Director, to be the state-wide litigation attorney,

which is a Honolulu position, and have the Honolulu advocates fly over to do the

Maui advocacy and outreach, which was Plaintiff's original job duties. Being the

"state wide" litigation attorney was never Plaintiff's original job duty or

assignment as it completely contradicts any agency reason for Plaintiff's forced

move to Maui..

24.        Plaintiff Bassett performed his job competently and with higher

standards at all times.

25.        **Defendant HAWAI'I DISABILITY RIGHTS CENTER,** is a

Hawaii Domestic Nonprofit Corporation registered in the State as of July 7th, 1977.

HDRC offices are located at 1132 Bishop Street, Room 2102 in Honolulu, Hawaii.

HDRC is the State's Protection and Advocacy Agency (P&A) as mandate by

Federal Law to provide legal, civil and human services for individuals with

disabilities or mental illness who are residing in the State of Hawaii. (42 U.S.C.

§§10803, 10805, 15043, and 29 U.S.C. § 794e). HDRC receives most of its

revenues in the form of grants from the U. S. Department of Health and Human

Services. HDRC receives grants from other federal agencies also.

26.        Federal sources are set at around $1.55 million dollars. State sources

of including Hawaii's Access to Justice Grant are also part of HDRC's funding

revenues. The non-regulated funds come in the form of attorney fees, of which

Plaintiff Bassett has, with regularity delivered to the agency, usually averaging over $90,000.00 per annum. Those fee revenues are co-mingled with regulated funds.

27.        Attorney fees are deposited and commingled with regulated federal and state grant funds in HDRC savings or checking accounts. Those attorney funds, therefore have lost their identity as non-regulated funds.

28.        HDRC does not have a treasurer on the boards as required for non-profits to monitor agency finances.

29.        HDRC does not have a conflict calendar.

30.        HDRC does not have an anti-bully policy or one that is implemented.

31.        HDRC does not have an anti sex-harassment or sex-discrimination policy or one that is implemented.

32.        HDRC does not have a Whistleblower's Protection policy or one that is implemented.

33.        **Defendant ERTESCHIKIS ERTESCHIK ESQ** is an attorney licensed to practice in Hawaii and at all relevant times was and is a resident of the City and County of Honolulu in the State of Hawaii.  He is sued in his official capacity as Executive Director of HDRC and in his individual capacity.  He is the

"de jure" Executive Director of HDRC, elected by the board. He has been the Executive Director of Defendant HDRC, on information and belief, from around 2010.

34.     Defendant Erteschik had placed some of his closest friends and other persons who are financially tied to HDRC on the board, including his old girlfriend, Maryellen Markley, who falsely claims to be a Ph.D. psychologist and who also falsely claims to have an MBA degree. Also on the board was Defendant Shawn Luiz, who abdicated his obligations as a board member to accept a job offering at HDRC in July of 2018, which facilitated Plaintiff's firing.

35.     **Defendant ANN E. COLLINS** is and was at all relevant time a resident of the County of Honolulu in the State of Hawaii. Defendant Collins is sued in her official capacity and in her individual capacity. Defendant Collins worked at HDRC since 1995 and, on information and belief, has resigned her position as of October 19th, 2018.

36.     Ms. Collins' job title was Director of Operations. She was the "de facto" Executive Director of HDRC. Defendant Erteschik had assigned nearly all powers and authorities of the office of the Executive Director to Defendant Collins.

37.      Defendant Collins, having the assignment or usurpation of Executive authority included the Executive Director's authority to hire and fire staff, to grant and withhold staff bonuses, manage all financial operations without oversight or outside supervision including, without the Executive Director's oversight, and without any internal audit, and without internal management oversight or verified auditing, and without any form of internal or external expense verification.

38.      Defendant Collins also had the Executive's authority to order staff discipline, including Plaintiff Bassett which she used in a harassing, retaliating and humiliating way.

39.      **Defendant JANE MIYAHARA** resides in the County of Honolulu in the State of Hawaii. Defendant Miyahara works at Defendant HDRC and has been working at HDRC for about 24 years. Defendant Miyahara's job title is "Office Supervisor" which is an administrative support position.

40.      Defendant Miyahara is sued in her official capacity.

41.      Plaintiff Bassett is informed and believes that Defendant Miyahara job duties include, acting as Defendant Collins' personal assistant. Defendant Miyahara is also very good personal friends with Defendant Collins.

42.     Defendant Miyahara acted either unilaterally or in concert with or otherwise had conspired with Defendant Collins to create a hostile work environment for Plaintiff Bassett, either before, or on or about May 1st, 2018.

43.     In furtherance of the aforementioned hostile work environment, Defendant Miyahara falsified a written report in an email to Ann Collins and to thereafter, several hours later sent such published defamatory statements, to Defendant Erteschik on May 1st, 2018.

44.   **Defendant ANDREW GRANT** is and was at all relevant times a resident of the County of Honolulu in the State of Hawaii. Defendant Grant is sued in his official capacity and his individual capacity.  Defendant Grant is on the HDRC board. Defendant Grant is the president of the board.  I am informed and believe he has held that position since the beginning of 2018.

45.     **Defendant MARYELLEN MARKLEY** is and was at all relevant times a resident of the County of Honolulu in the State of Hawaii. Defendant Markley also goes by the alias of Dr. Maryellen Markley and by the alias of Maryellen Markley PhD. And she has several other aliases. Defendant Markley is being sued in her official capacity as a board member and in her individual capacity.

46.     Defendant Markley, per the licensing records department at the DCCA does not have a license or certification to be able to call herself a psychologist. Defendant Markley claims to have gotten her Ph.D. from Honolulu University which is not an accredited school so she has no right or authority to claim to have a Ph.D., or use Ph.D, in her name.  Defendant Markley informed Plaintiff through an email, that all her licenses and certificates have been hacked multiple times to explain why the DCCA has no record of her "accomplishments."

47.     Defendant Markley has previously claimed that she a Certified Hyperbolic Therapist when she was charging parents of autistic children a cure or therapy for autism, all of which is untrue.

48.     Plaintiff Bassett vetted defendant Markley. Plaintiff Bassett discovered that American University has no record of defendant Markley graduating or attending the University on or around 1985 as she claims nor is there any record of her attending any accredited college in the United States.

49.     Defendant Markley is Defendant Erteschik's old girlfriend and associate from many years ago.

50.     Defendant Markley is on HDRC's board as the board's vice president. On information and belief she was previously on the HDRC board as the board's treasurer for three years.

51.     Defendant Erteschik and Defendant HDRC failed to investigate Plaintiff Bassett's complaints about possible monetary mismanagement in the fiscal year 2017.

52.     Plaintiff Bassett reported to Defendant Erteschik that there was the possibility of  an unaccounted  $150,000 (plus) dollars (actually it was more in the neighborhood of $350,000.00) when Defendant Erteschik informed Plaintiff on or around mid or late September 2017 that no Bonuses are available for the end of fiscal 2017 because the agency (that would be Defendant Collins and Erteschik) had spent way over budget. Plaintiff later to find out the annual deficit was around $80,000 per a report by Defendant Erteschik plus the $200,000 carry over from the 2016 would bring the annual budget deficit to $280,000 plus the missing fee revenue of approximately $90,000 would bring the unaccounted and unbudgeted shortfall to between $350,000 to $380,000.

53.     Plaintiff informed Defendant Erteschik on July 2nd 2018 via a recorded phone conversation that the bogus negotiations for a full release were

14

over. That the offer of a full and free release for the agencies violations of Title

VII of the Civil Rights Act of 1964 was withdrawn  due to Defendant

Erteschik's and Collins' bad faith. That Plaintiff was not going to give the

Defendants a contract with a settlement of a full release if the Defendant's

intended to breach the contract and fire Plaintiff anyway. So, that if they

(Defendant's) wanted a release from Plaintiff now, they would now have to

buy it. The Plaintiff  then told Defendant Erteschik that Plaintiff filed a

complaint with the EEOC on or about July 1st, 2018. Defendant Erteschik

asked me in response to that report of filing an EEOC complaint that, "would I

like to be fired or if I would prefer to quit."

54.     Defendant Erteschik in fact responded to Plaintiff's inquiry as to,

"what grounds was my (the Plaintiff's) firing to be based" during the July 2nd

2018 recorded telephone conversation? Defendant Erteschik stated in response,

that, "I don't know, I don't know."

55.     Defendant Markley was contracted or paid or otherwise induced to

draft a pretense frictional cover report on a pretense investigation either on or

about June or early July of 2018, for the purpose of clearing Defendant

Erteschik and Plaintiff Collins of any wrongdoing and also for implicating

15

Plaintiff Bassett for "false reporting of administrative malfeasance" to facilitate Plaintiff's dismissal/ separation or firing from HDRC.

56.      Plaintiff Bassett was cautioned in early July of 2018 by staff or other people familiar with the situation in HDRC's office, and familiar with Defendant Markley that Defendant Markley was instructed by Defendant Collins and Defendant Erteschik to bait or entice Plaintiff Bassett to become angry by using offensive and accusatory language during the July 6th, 2018 interview. That any angry outburst in response to insults would be reported as a complaint to Defendants Collins and Erteschik and used as a basis to put Plaintiff on a second probation, and to fire Plaintiff.

57.      Plaintiff Bassett did give proper legal advice to Defendant attorney and board member Defendant Luiz after he accepted a contract with HDRC or other position with Defendant HDRC to take over my caseload after I was fired on July 13th 2018.

58.      While Defendant Luiz was a board member, Plaintiff had technically retained Defendant Luiz in his capacity as an attorney when I asked him in September of 2017 and again in the summer of 2018 to investigate Defendant's malfeasance and to protect Plaintiff from retaliation and report back to Plaintiff regarding his employment status.

16

59.     During those contacts I asked Defendant Luiz for an investigation and for his legal advice.

60.     I also asked Defendant Luiz for board protection regarding Defendant Erteschik and Defendant Collins' retaliation against Plaintiff Bassett for reporting their possible criminal financial mismanagement.

61.     Plaintiff gave Defendant attorney Luiz a full report of the wrongful and unlawful activities Defendant Collins and Erteschik as I have investigated.

62.     I gave Defendant Luiz a report of my activities, the activities of Defendant Erteschik and Collins and my legal defenses against Defendant Erteschik and Collins for their retaliation and threats of firing Plaintiff Bassett.

63.     Defendant attorney Luiz gave me his legal advice after the last board meeting he attended on or about September or October of 2017 wherein Plaintiff was informed that Plaintiff was personally and professionally disparaged by Defendant Erteschik and Collins to the board members blaming Plaintiff for the Defendant's massive financial shortfall for fiscal 2017.

64.     Defendant Luiz falsely advised Plaintiff that Plaintiff's job was secure and that I had nothing to worry about. Sharon Smockhoffen, board president at that time informed that me that Luiz's advice was false.

65.     I relied on that legal advice of Luiz to my detriment, mentally, physically and financially in that I falsely believed that my job was secure.

66.     Due to defendant Attorney Luiz's false and or negligent legal advice, I did not take alternative or other appropriate actions to save my job.

67.     Defendant Luiz was a contributing element to my firing.

68.     Defendant Luiz met with Defendant Collins and Defendant Erteschik in the HDRC office for a lengthy meeting about 3-4 weeks before my firing and signed a contract to take over my casework. I advised Defendant attorney Luiz that taking my position is a conflict of interest. It constitutes breach of attorney client privilege and loyalty to the client, among other things.

69.     Defendant attorney Luiz was retained, per the HDRC contract or otherwise, to prosecute an unemployment insurance appeal against Plaintiff Bassett on regarding my wrongful termination involving all material issues which Defendant Luiz representing Plaintiff against the agency and Defendants.

70.     Defendant Luiz is taking a case (Unemployment Appeal No. 18021572) against a former client on the exact same issues that I retained him to protect me from and Defendant Luiz is using our attorney client communications against Plaintiff Bassett. Defendant is knowingly and

18

intentionally allowing Defendant's to use false defamatory testimony against Plaintiff causing Plaintiff to suffer extreme mental anguish.

71.     The original unemployment investigator (Mr. Lee) found no merit to defendant HDRC's reasons for terminating my position and that all reasons stated were obvious pretenses, just as I had informed Defendant Luiz.

72.     Therefore, Defendant Luiz has committed legal malpractice against Plaintiff Bassett and is being sued for such wrongful conduct.

73.     Defendant Luiz had presented Defendant Markley, and Defendant Miyahara who knowingly perjured themselves at the Unemployment insurance appeal on November 6th 2018.

74.     Defendant Luiz had presented Defendant Erteschik who also perjured himself and made false and defamatory allegations against Plaintiff Bassett which would normally alerted any sentient being that Defendant Erteschik was committing perjury. False defamatory testimony is illegal but it is privileged from civil suits.

75.     Plaintiff Bassett was fired for asking Defendant Erteschik to please inform Defendant Miyahara that Plaintiff Bassett was demanding that she retract her defamatory statements against Plaintiff.  Something that Plaintiff is entitled to do.

76.     Defendant Luiz now allowed Defendant Erteschik to defame

Plaintiff Bassett by allowing Defendant Erteschik to falsely testify that Plaintiff

Bassett was also fired because of concerns of his delusional mental health and

slothful appearance on the Novembe4rt 6th 2018 Unemployment Insurance

appeal.

77.     Defendant Luiz knew these allegations were false and defamatory

and nonetheless allowed Erteschik to testify supporting these false allegations.

Defendant Luiz is aware that Plaintiff Bassett is entitled to be in defamatory

free workplace and the firing of Bassett was not justified.

78.     Defendant Luiz has also violated his duties as a board member, to

be loyal to the corporation only. Defendant Luiz's loyalty went only to himself

as an opportunist, and then to Defendant Erteschik and Collins in his desire in

obtaining new employment, taking over my position at HDRC.

79.     Defendant Luiz took the position to facilitate the wrongful firing of

Plaintiff Bassett, thereby engaging in concert and conspiracy with other named

Defendants in retaliation against Plaintiff Bassett for filing a sex

harassment/retaliation complaint with the EEOC and for reporting unlawful

activities by Defendant Collins and Erteschik, tow whit, financial

misappropriations, to law enforcement.

20

80.     Mr. Luiz's action were violation of the Whistleblowers' Protection Act and Title VII of the Civil Rights act of  1965 701(a).

81.     Defendant Luiz's violated his legal obligation to me, to protect me and/or give me proper advice from unlawful or wrongful actions by Defendants Collins and Erteschik.  Defendants failure to protect Plaintiff Bassett against Defendant Collins and Erteschik's retaliation and wrongful termination was deliberate and done with malice which facilitated my termination causing financial harm and mental anguish.

82.     Defendant Luiz also violated his duty as HDRC board member to be loyal to the corporation.

83.     Plaintiff Bassett had communications with 5 board members before and after he was terminated. Those members were, Shawn Luiz, board president Andrew Grant, board secretary Amanda Kelly PhD., Bud Bowles and Board vice-president Maryellen Markley. Plaintiff Bassett was always professional and respectful to all board members to the degree that the situation merited.

84.     Plaintiff Bassett had warned board members not t retaliate or conspire with Defendant Collins' and Erteschik, but hose warnings went unheeded to the great disappointment of Plaintiff Bassett so Defendant board

members were warned of possible legal consequences for their violations of law. Those warnings constitute appropriate legal advice.

85.     Defendant Markley did in fact conduct her sham investigation by interviewing Plaintiff Bassett on July 6th 2018, on Maui, which she conducted in a hostile manner and bizarre manner.

86.     Defendant Marley wanted a hostile reaction from Plaintiff Bassett which would be then used as a pretense to fire Plaintiff Bassett.

87.     Defendant Markley was complicit with Defendant Erteschik and Defendant Collins by fact retaliated against Plaintiff Bassett for reporting a sexual harassment, retaliation for reporting Defendant Erteschik's failure to respond to Plaintiff Bassett's reporting of Sexual harassment and Defendant Erteschik's retaliation for reporting Sexual harassment. That including the retaliation and hostile work environment which followed including retaliating against Plaintiff Bassett for making a report of possible illegal financial mismanagement by Defendant Erteschik and Collins.

88.     Defendant Markley defamed me, treated me in a hostile manner, insulted me, falsely accused me of being a sexual harassment perpetrator, falsely accused me of having an affair with Defendant Collins and falsely accuse me that my complaints against Defendant Collins were not credible.

89.     Defendant Markley, made rambling offensive remarks, took a patronizing tone, made offensive facial and hand gestures during the interview of July 6th, 2018 for the purpose of inciting anger, disrupting the interview and embarrassing myself in front of my wife who was also present.

90.     Defendant Markley repeatedly informed me that Defendant Erteschik's reputation was "stellar" so any report of his wrongdoing was not believable, thereby falsely stating that I was fabricating my complaints against Defendant Erteschik.

91.     Defendant Markley refused to hear the details of defendant Collins sexual demands and acts of retaliation and hostility against Plaintiff Bassett regarding the sexual harassment and retaliation. Defendant Markley actually refused to hear any details of Plaintiff Bassett's harassment and retaliation complaints.

92.     Defendant Markley informed that she contacted security at the Baltimore Marriott Waterfront prior to our meeting of July 6th, 2018 and informed me that there was no report of security contacts on June 6th, 2016. That was probably true, as Defendant Markley reported that she requested security contacts at the hotel on June 6th, of 2016. That date was 10 days prior

to the actual sexual harassment of June 16th 2016. Plaintiff Bassett was home on Maui on June 6th 2016.

93.     Defendant Markley also told Plaintiff Bassett, during the "interview" on July 6th 2018 that there witnesses at the Baltimore Marriot who remembers me kissing Ms. Collins at the Marriott's bar, insisting that I was the perpetrator of consensual or non-consensual sexual activity with Defendant Collins, implying that Plaintiff Bassett was the aggressor and that Ms. Collins was the victim.  Defendant Markley's outrageous statements were false and defamatory accusations.

94.     Defendant Markley's accusations clearly conflicts with the demands in Defendant Erteschik's contract negotiations in which Defendants Collins, Erteschik and HDRC wanted a full and complete release from Plaintiff Bassett of the Defendant's wrongdoings in the contract in exchange for a promise to end the hostile work environment, the retaliations, and a promise to allow Bassett to continue working at HDRC, in peace until his retirement.

95.     I did inform Defendant Erteschik that on June 16th 2016 in the Baltimore Marriott's bar, Defendant Collins demanded that I kiss her. It was demanded, forced, repugnant and nonconsensual.

24

96.     Defendant Markley thereafter drafted a cover "official report" of the sham "investigation."

97.     No outside investigation into my complaints were ever conducted by the HDRC board or by Defendant HDRC.

98.     Defendant Markley's report contained numerous errors of fact including reporting the date of the original sexual assault and harassment in Baltimore at the Baltimore Marriott Waterfront wrong. She reported her investigation was for June 6th, 2016 when Defendant Collins' original harassment occurred on the late evening of June 16th 2016.

99.     Defendant Markley's conspired with Defendant Collins and Defendant Erteschik to draft a report that would be used cover to exculpate and shield Defendant Erteschik and his close friend and co-conspirator, Defendant Collins.

100.    Defendant Erteschik did in fact make references to Defendant Markley's sham investigation report in the letter of dismissal to Plaintiff Bassett on July 13th, 2018 as a reason to justify the firing of Plaintiff Bassett.

101.    **Defendant SHAWN ANTHONY LUIZ ESQ**, is and was at all relevant times a resident of the County of Honolulu in the State of Hawaii. Defendant Shawn Anthony Luiz is being sued in his official capacity as a

board member and contracted attorney for HDRC and in his individual capacity as Plaintiff Bassett's attorney.

102.    **Plaintiffs** are informed and believe and thereon allege that at all times relevant herein, each of the Defendant JOHN DOES 1-10 and JANE DOES 1-10 were responsible in some manner for the occurrences and injuries alleged in this complaint. Their names and capacities are currently unknown to Plaintiffs. Plaintiffs will amend this Complaint to show such true names and capacities when the same have been ascertained.

103.    Defendants, **and** each of them, including Does 1 through 10, contributed to the events and happenings as hereinafter set forth and that their acts and omissions contributed to the Plaintiffs' damages and losses as hereinafter set forth, and that each of the Defendants, including John and Jane Does 1 through 10, were at all times herein mentioned the agents and employees of each other and of each of the other Defendants, and that each of the acts of which Plaintiff's complain was ratified by each of the other Defendants or committed with advance knowledge and direct participation of each of the other Defendants

## FACTUAL ALLEGATIONS RELEVANT TO ALL CAUSES OF ACTION

## **Plaintiff is a victim of Sexual Harassment**

104.    When Plaintiff Bassett, (a married man) rebuffed Defendant Collins demands Defendant Collins engaged in a campaign of retaliation and harassment threatening Defendant Bassett for rejecting or refusing her sexual advances, and was spreading rumors about Mr. Bassett's personal life, his dress, his mental health and fitness to practice law. Defendant Collins orchestrated a contrived discipline file of phony complaints created out of retaliation, which eventually led to the wrongful dismissal Plaintiff Bassett on July 13th, 2018.

105.    Plaintiff had always considered Defendant Collins as an old "close friend," prior to the evening June 16th 2016, as we had worked together for 18 years at that time. Defendant Collins and I were at an agency conference in Baltimore on June 15th through the 17th, 2016.

106.    Defendant Erteschik also attended that conference in 2016. I lived on Maui, Defendant Collins worked in the Honolulu Office, so we would only see each other once a month during my monthly trainings and for the annual Christmas party or special events.  On rare occasions, Defendant Collins and Plaintiff would get together at the conference in Baltimore and have a couple of drinks and talk about office politics, the conference or banter about current events, old movies or the City of Baltimore.

27

107.    On the evening of June 16th, 2016, things changed. Defendant Collins and Defendant Erteschik were at the the Baltimore Marriot Waterfront bar. Defendant Collins was drinking wine at that time. Plaintiff met up with Defendant Collins after Defendant Erteschik left to do something.  That left Defendant Collins and Plaintiff alone.

108.    Defendant Collins was ordering more and more glasses of dark red wine and it was, one after another.  Within a period of less than an hour, Defendant Collins had ordered at least another 4 glasses of red wine. That was 4 glasses for each of us.

109.    I knew Defendant Collins enjoyed drinking during the office Christmas parties. She would ask for a bottle of Jameson Irish Whisky, because that is what she wanted for Christmas. I was not aware that she had a serious alcohol problem.  Defendant Collins was drinking a lot before I even sat down at the table with her. Defendant Collins became "frisky" and started to talk about her internet "boyfriend" and was asking me if I thought that her internet friend was in love with her.

110.    This behavior was new to me, so, I just blurted out, "yea, probably" or something along those lines. Then Defendant Collins just blurted out that she wanted to "kiss me."   She was 69 years old and I was 62 at the time and

married. I was shocked at the request as we were good friends and nothing more.

111.     The most physical contact we had would be a **"Faire la bise" cheek kiss** in a greeting, and only on very special occasions and at very public locations. I offered a cheek **"Faire la bise" kiss but** Defendant Collins demanded more.

112.     Defendant Collins demanded a lip kiss. One thing that is consistent with Defendant Collins is if you refuse her requests, you will be targeted for reprisal. In my mind this can't be happening.

113.     I was forced to kiss her, it was non-consensual, and she grabbed me as I had to pull away. I t was humiliating as there were several folks in bar watching. Defendant Collins was behaving in a way that can't be described. She was intoxicated but highly animated and coltish.

114.     I told Defendant Collins that we needed to leave the bar. I was holding her up somewhat loosely and as we walked past the front desk, she stumbled and fell pulling me down with her in a wet puddle.  The staff at the front desk were staring with mouths open.

115.     We got up and walked 20 yards to a place where we could sit, near the elevators and we rested for a minute or two. Two security personnel were

notified of the fall and they made contact with us by the elevators. They asked if we needed help. Trying to avoid a bigger scene, which would have added more embarrassment to the both of us.

116.     Plaintiff told them that I would handle the situation. The security detail departed. That was a mistake.

117.     Defendant Collins then blurted out that we were going to go to her room and engage in some sort of sexual activity.

118.     Plaintiff told her "no, that was a very bad idea."  Defendant Collins then blurted out that she "was in love me."

119.     Defendant Collins was intoxicated but she was well aware of place, time, and who she was talking with and what she was saying. She then told me that "I owed her," that she "got me my job" and that "she protects me." From what, I am not sure. So now I owe her.

120.     Defendant Collins was my apparent supervisor and she had the power to hire and fire and discipline staff. I know that Defendant Erteschik is bound to what she wants as Defendant Erteschik has told me that he can't control Defendant Collins.

121.     He later told me in November 2017 that he needs her to help him with his job as he has not learned yet, even after 7 years at the job.

122.    He further stated that he can't discipline her as "she can hurt me," in his exact word. But all the staff at HDRC knew from day one that Defendant Collins controlled Defendant Erteschik. There was no way I could reciprocate or condone or fulfil Defendant Collins sexual or romantic demands or fantasy, so I knew at that time, my career at the agency was over.

123.    Plaintiff told Defendant Collins that I would take her to her room and depart. Defendant Collins could not be reasoned with, as she very aggressively demanded that I would stay the night with her.  Defendant Collins was needed support or was acting as if she needed supports so Plaintiff took her to her room and made one last attempt to dissuade her of her sexual demands so Plaintiff could leave without fearing retaliation.

124.    Plaintiff was unsuccessful, Defendant Collins demanded that Plaintiff stay and she started to disrobe telling me she was going to take all her clothes off. At that time Plaintiff felt like she had a gun to my head.  This was so disturbing to me and Plaintiff felt out of control. She then partially disrobed, took her pants down to her knees, but decided to clean up in bathroom, so when she left to the bathroom Plaintiff just got out of the room as fast as Plaintiff could. Plaintiff was hoping she would forget but Defendant Collins didn't forget. The retaliation began almost immediately.

31

**The Plaintiff is a Victim of Retaliation**

125.     Retaliation against plaintiff began in July of 2016 right after the

Baltimore sexual harassment.  When Plaintiff Bassett, (a married man)

rebuffed Defendant Collins demands Defendant Collins engaged in a campaign

of retaliation and harassment threatening Defendant Bassett for rejecting or refusing her

sexual advances, and was spreading rumors about Mr. Bassett's personal life, telling

Defendant Erteschik on or about January 2018, that his dress was not up to defendant

Collins' satisfaction and, on May of 2018 was falsely telling Defendant Erteschik that

Plaintiff's mental health was in decline, that Plaintiff was delusional which in all

considerations, implies that Plaintiff is unfit to practice law. Defendant Collins

orchestrated a contrived discipline file beginning in August 17th, 2018.

126.     On August 16, 2018 plaintiff received a phone call from defendant

Erteschik and defendant Collins demanding to know when plaintiff's original is

billing will be done. The demeanor of Defendant Erteschik was threatening,

scolding and demeaning. Plaintiff informed defendant Erteschik that Plaintiff

had six or seven billings finished that needed a review and could get those out

in a couple of weeks and finish the rest in a month or so.

127.     Plaintiff was shocked and stunned to hear defendant Erteschik

demand attorney's fees in a way that it was presented as if Plaintiff owed a

personal debt to Defendant Erteschik, and presented as if he was panicking to get money to pay off a debt he owes to the mob.

128.     I had to remind defendant Erteschik that I've been billing and bringing in fees consistently and doing it for 20 years without his urging, threats or help. Plaintiff bring in fees at a rate that avoids poor spending decisions, and makes sure the budget is balance every year.

129.     Plaintiff does not honestly trust Defendant Collins or Defendant Erteschik with more than $100,000 per year at it seems they are always gone on vacations or going to unnecessary junket conferences, (maybe 4 or 5 each in 2017) even though neither one does individual casework and they are both getting ready to retire.

130.     Collins gives herself a $99,000 dollar salary and a $17,000 bonus for being the agencies data entry person and bookkeeper. In 2017, the agency spent $57,000 on travel when the usual travel expenditure is around $25,000.00, which is still high. On information and belief about $50,000 in travel expenses went exclusively to Defendant Erteschik and Defendant Collins for 2017 per form 990.

131.     The voracious constant demand for money was a red flag to Plaintiff. The meanness and demeaning manner in which Plaintiff was

addressed was consistent with Defendant Collins retaliation but it seem that
there was more to it than just retaliation. There was a desperation in the tone of
Erteschik and Defendant Collins in their demands for cash from Plaintiff's
billing portfolio.

132.    Plaintiff was hounded constantly in 2017 through 2018 on a regular
basis.

133.    Plaintiff believed that Defendant Collins was getting ready to retire,
which is another red flag. She was 70 plus years old and per my understanding,
and on information and belief, not in good health. Plaintiff noticed on one of
my trips to the office in 2017 that Defendant Collins was exhibiting acquired
strabismus or exotropia seemingly acquired after an illness that hospitalized her
in California, and per her own statements, nearly killed her and gave her
double pneumonia. She stated that she lost 40lbs during the illness.

134.    Defendant Collins travels to California on a regular basis for Botox
injections for her voice. Defendant Collins did quit just after Plaintiff was fired
but went back to HDRC on information and belief to finish reports.

135.    On August 17, 2018 Defendant Erteschik delivered to plaintiff an
abusive and humiliating letter giving plaintiff an ultimatum that he bill his
entire portfolio within six weeks and threatening discipline or termination if

34

Plaintiff didn't finish by the end of September 2018. Billing portfolio that was maybe about $300,000. Defendant Erteschik was asking me to complete a task that was impossible to do for my office on Maui. Plaintiff had already brought in about $85,000 when the letter was sent in August. Plaintiff only earns $89,000 plus benefits.

136.    The avarice from Defendant Collins and Erteschik for cash money from Plaintiff's attorney's fees portfolio was sending red flags to Plaintiff as I've never been pressured to bill at all, ever, until after the summer of 2016. No other staff member has ever come close to doing what Plaintiff has done for the agency in terms of bringing in extra money, and it was unheard of prior to my hiring in 1998 and not only was Plaintiff being a victim of my success in prevailing or getting settlement agreements, Plaintiff was being humiliated and threatened with termination for my success.

137.    In my 20 years, no other staff member has had to put up with the degrading and humiliating attacks from defendant Collins and defendant Erteschik demanding cash money in such a shocking and degrading manner.

138.    On information and belief, you could combine the total fee revenues generated and collected  by the approximately 20 other attorneys that had

worked at HDRC as a lead counsel in the last 20 years, and the total would not match up to one of my average years.

139.    There just is no rational basis for wanting the $330,000 to be billed in six weeks. Mismanagement was certain and it would leave nothing for   next year.

140.    It will still take months to collect and there is no rational need for it to have it all in for fiscal year 2018 unless there was another agenda.

141.    Plaintiff billed for over $230,000, a monumental task, by the end of September 2017 and was told that Plaintiff substantially complied with administrative demands of the August 17th 2017 demands so there would be no further discipline per Defendant Erteschik. Defendant Collins would still denigrate Plaintiff.

142.    Plaintiff was convinced that Defendant Collins would "order" Defendant Erteschik to fire me once Plaintiff had finished all my billing.  That is what happened exactly.

143.    At the end of fiscal 2016, When bonuses were handed using the revenues that Plaintiff brought in, Plaintiff was told by Defendant Erteschik that Plaintiff was not going to receive a bonus for 2016 because defendant Collins wasn't happy as she wanted more money than the $120,000 that

Plaintiff brought in.  Defendant Erteschik was actually afraid of Defendant

Collins, and he refused to exert his authority to stop her harassment of Plaintiff

and constant retaliation. This was prima facia evidence of Defendant

Erteschik's abdication of his authority to Defendant Collins, my retaliator and

nemesis.  Defendant Erteschik told me that if Plaintiff wanted a bonus Plaintiff

would have to beg defendant Collins (a coworker) to give me a bonus because

he did not have the courage to tell his subordinate that he was in charge of

giving out bonuses and he was my direct supervisor.

144.    I was forced to beg for my $4000 bonus which was humiliating

especially light of the fact that the bookkeeper defendant Collins gives herself

$17,000 bonus out of the money Plaintiff bring in, (2016) and defendant

Erteschik gives himself a $13,000 bonus (2016) from my attorney's fee

revenues for doing basically very little, besides attending meetings, answering

emails, hanging out at the legislature and attending conferences.

145.    On or about August 21, 2017 plaintiff brought in billings totaling

approximately $39,000, and it still wasn't enough to stop the harassment.

146.    On August 21, 2017, Plaintiff decided that Defendant Erteschik

needed to know what happened in Baltimore on  June 16th, 2016 that caused a

rift in my relationship with Defendant Collins

37

147.    I did not previously notify defendant Erteschik of what happened in Baltimore as Plaintiff knew defendant Erteschik would come to the defense of defendant Collins and the office allies for Collins, including defendant Miyahara and legal secretary Mike Rabanal would go to her defense also. Plaintiff would be shunned, embarrassed and ostracized. Plaintiff would be called a liar, bare the shame and embarrassment without administrative protection and most likely be targeted for dismissal. That is what happened.

148.    HDRC does not have a sex harassment policy or one that is followed.

149.    Defendant Collins has a near dictatorial grip over the office personnel, Plaintiff would assume that no one would come to my defense at the office. Plaintiff still felt that Plaintiff still needed to report the incident to defendant Erteschik in August on or about August 21, 2017, due to the stress of the hostile work environment was not improving over time but getting worse. Plaintiff decided to report to defendant Erteschik what happened in Baltimore on June 16, 2016 at the conference with defendant Collins and myself.

150.    In a strange turn of events defendant Erteschik at first refused to listen to my report without having defendant Collins present as if he was not

capable of decision-making on his own. I insisted that the conversation remain confidential at that time and between us.

151.    Plaintiff recalls that Plaintiff made arrangements to telephone Defendant Erteschik after hours on his private phone. I informed defendant Erteschik then exactly what happened in Baltimore between defendant Collins and myself on the evening of June 16th 2016 to hopefully explain how I went from the agencies golden boy to the cash cow pariah. Hopefully to explain to Defendant Erteschik as to the reasons of why Defendant Collins was on the warpath of constant threats and humiliating comments to Plaintiff.

152.    At first defendant Erteschik said that defendant Collins "must've been really drunk to do what she did." I responded, "yes, she was hammered."

153.    Defendant Erteschik then told me that because he wasn't there on June 16, 2016, there's nothing he can do. I told him that he didn't have to be there on June 16, 2016 because I was telling him exactly what happened on June 16th 2016, therefore he in fact does know what happened. I told defendant Erteschik that I was not interested in filing suit or having defendant Collins disciplined but I insisted that the harassment and retaliation stop.

154.    The harassment never stopped and even got worse. Eventually defendant Erteschik joined in with defendant Collins with the retaliation campaign against plaintiff

155.    Defendant Erteschik would eventually just tell me that Plaintiff was flat out lying about Baltimore, that Plaintiff's complaint was just "BS," that was in Defendant Erteschik's own words.  I was threaten with termination thereafter for even bring up the subject.

156.    Plaintiff also suspect that Defendant Collins and Defendant Erteschik were misusing, mismanaging, siphoning and/or embezzling agency funds.

157.    Defendant Erteschik can't account for $200,000.00 that should be in the carry-over account. I brought in $95,000.00 (more or less and the approximately $50,000 in overage spending.   Cash this year plus the $220,000.00 in billing I am told that there is no money for bonuses for me or the kiddies. My revenues are not federal funds so they don't need to be accounted for by the Federal agencies that provide oversight.  Very easy to divert for personal use. There was always money for bonuses and conferences. Not now. I reported it to the board (one member, a lawyer Luiz).  There is no oversight of the finances except the by the.   told me that the board was mad at

me for not billing fast enough I found out that was a lie. I talked to the board.

In my 20 years there.  Nobody has ever demanded that billing be current. It

was never even monitored, ever. I have always done it, at a reasonable pace. So

why now?

158.     Defendant Ann Collins has worked at HDRC since before 1995m

she is 70-71 years old. She quit her position as of October 2018, Defendant

Collins is HDRC's bookkeeper and Director of Programs.

159.     Defendant Ann Collins has full and exclusive control of all agency

revenues, attorney fees (@$90,000.00 average per year from Plaintiff Bassett)

all agency expenditures, all bookkeeping, all ledgers, bank statements, and

credit card statement and invoices without any legitimate oversight.

160.      At the end of fiscal year (late September or early October 2017) I

was told by Erteschik, via phone, that the agency was broke, so there would be

no bonuses. I always get about a $4000.00- $5,000 bonus.

161.     I told Erteschik, that is impossible, as we always have at least

$100,000- $150,000 cash on hand residuals every year ( actually we had

$200,000 beginning of fiscal 2017, $250,000 at beginning of fiscal; 2016) and I

just had deposited a $67,250.00 at the end of June early July 2017 so that

should still be there in the  HDRC savings bank..

162.    I told Erteschik to investigate as we have a very poor system of financial management involving zero oversight.

163.    Erteschik told me he would investigate my report of possible missing funds to Defendant Ann Collins.

164.    Defendant Erteschik gave defendant Collins his email password to his account plus the agency authorized Defendant Collins to have her own separate domain name under a second Erteschik account so she could retaliate against plaintiff using Defendant Erteschik's name.

165.    Defendant's Erteschik gave Defendant Collins his agency email password so she could impersonate Defendant Erteschik at any time, to act as Defendant Erteschik's imposter to retaliate against the Plaintiff.

166.    I am informed and believe that Defendant Collins was also given, devised, had programmed or usurped an exclusive email account on HDRC DNS's server, under the name of the Erteschik, (Defendant Erteschik) which, of course had a separate password and separate account.

167.    Defendant Collins could now impersonate Defendant Erteschik, online, to harass and retaliate against Plaintiff Bassett and avoid a complaint of hostile work environment, harassment, retaliation liability for Title VII retaliation violations or violations of the Whistleblowers Protection Act.

168.     Defendant Erteschik's official office email domain name was Louis@hawaiidisabilityrights.org and I am informed and believe Defendant Collin's would impersonate Defendant Erteschik online using an unofficial mailbox domain under Defendant Erteschik name using her own separate Domain Name of Louis@disabiltyrights.org.

169.     The alternative domain name used for impersonating the Executive Director, Defendant Erteschik, by Defendant Collins. I am informed and believe this new domain name and Erteschik mailbox was set up and established by HDRC's IT technician and office computer programmer, Ron Baltero

170.     Defendant Collins was "impersonating Erteschik" by using the second Erteschik domain name email account to communicate with Defendant HDRC's employment lawyer, John Knorek.

171.     I am informed and believe that attorney John Knorek's had knowledge that the domain name of Louis@disablityright.org was assigned to a mailbox used by Defendant Collins and was not  going to Defendant Erteschik. If true, attorney Knorek is therefore complicit in Collin's retaliation,

172.    When Defendant Collins, went online and impersonated Defendant Erteschik she could therefore remain incognito engage in retaliation against Plaintiff. Defendant Erteschik's

173.    Defendant Collins was in fact retaliating against Plaintiff, in violation of Title VII of the Civil Rights Act of 1964 and the Whistleblowers Protection Act in her communications with attorney John Knorik.

174.    Defendant Collin's and attorney Knorik were complicit in sabotaging Defendant Erteschik's and Plaintiff's contract agreement. Defendant Collins wanted to make sure that the contract would never be signed as Defendant Collins wanted to continue her retaliation and eventually have Plaintiff fired.

175.    Thereafter Defendant Erteschik and Plaintiff agreed to put Plaintiff in a contracted position to keep Plaintiff safe from the disparaging threats of termination and hostile work environment created by Defendant Collins.

176.    Defendant Erteschik could not consummate the creation of a employee contract for Plaintiff as Defendant Collins would not allow it.

177.    Defendant Erteschik had surrendered his authority to Defendant Collins which amounted to a total abdication of Defendant Erteschik's executive authority to Defendant Collins, allowing Defendant Collins to use

Mr. Erteschik's email account in "Lou's" own persona to intercept confidential communications (a  crime and violation of HI Rev Stat § 711-1106.6) and to deliver impersonated electronic mail to Plaintiff Bassett for the purpose of bullying, harassing, humiliating, threatening and retaliating against Plaintiff Bassett. Defendant Collin's in concert with Defendant Erteschik has caused defendant Bassett, mental, physical, emotional and financial harm.  Such actions by defendant Collins and Erteschik were done with the intent to harm and done with malice. Plaintiff's proposed contract was a gift to the agency wherein Plaintiff's offered to sign a contract wherein plaintiff promised; giving all Defendant's a full release of any and all of their tortious malfeasance against Plaintiff in exchange for a promise not to harass, retaliate or fire Plaintiff Bassett to an agreed retirement date in November of 2019 without monetary consideration. Plaintiff just wanted the harassment and threats of termination to end.

178.    Defendant Collins was sending an email/emails to Plaintiff on 04/09/2018 using Defendant Erteschik's email account and Defendant Erteschik's name. Defendant Collins threatened fire Plaintiff in the 04/092018 email  to Plaintiff for asking assurances from Defendant Erteschik that his job was safe from Defendant Collins' wrath, threats and humiliating remarks.

Unbeknownst to Plaintiff, Defendant Collins was monitoring Defendant Erteschik's email communications with Plaintiff in real time. Plaintiff's confidential email communications to the Director were being intercepted by Plaintiff's sexual harasser and retaliator, Defendant Collins. Defendant Collins was impersonating Defendant Erteschik in his email account for the purpose of harassing and retaliating against Plaintiff which is a misdemeanor in Hawaii. It violates Hawaii's anti-bullying statute.

179.    It was generally easy to spot Defendant Collins' email to Plaintiff using Defendant Erteschik's email account as her emails to me had an immature, petulant, scolding threatening tone to them which was never used by Defendant Erteschik.

180.    Defendant Erteschik confirmed that Defendant Collins was using his account to harass and retaliate against Plaintiff on 04/09/2018, right after I received the cloaked email from Defendant Collins.

181.    Plaintiff is a Whistleblower

182.    In this complaint, Plaintiff alleges that Defendant Collins and Defendant Erteschik has mismanaged or misused agency funds, used agency funds for personal use. Plaintiff Bassett has reported the same to Defendant Erteschik, who responded by threatening termination. Further reports and

46

complaints of the same to the Defendant HDRC board in September of 2017 and again in June of 2018 when the board did nothing on Plaintiff's complaints but the board president and board vice president did retaliate against Plaintiff Bassett by investigating Plaintiff and by echoing Defendant Collins demands for cash revenues by making demands that Plaintiff complete his billing and bill collections before investigation begin.

183.     When it became clear that Defendant Erteschik and the board officers were complicit in the monetary mismanagement or otherwise complicit in the retaliation for Plaintiff's reporting of the possible financial mismanagement, Plaintiff Bassett reported the agencies monetary financial mismanagement to law enforcement, including contact the Attorneys General Criminal Division, Bill Beckley, Chief of HPD's White Collar Crimes Division, Chris Van Marter of the City Prosecutors the week just after June 18th, 2018 and thereafter I contacted the US DHHS Inspector General about a month later at the recommendation of HPD Chief Bill Beckley and made a complaint and report of money mismanagement. Law enforcement needs the corporations financials before they open a case therefore in this complaint Plaintiff is requesting such.

184.     I was being targeted for dismissal regardless since August 17th 2017 whether I complied with all of the agencies demands or not. So in September of 2018 I first contacted Attorney Shawn Luiz, my old co-counsel at HDRC.

185.     I told Luiz the whole story of the missing funds, the retaliation and Defendant Collins harassment in Baltimore on June 16th 2016, and the threats of my termination. I asked Luiz to represent me and fully expecting Attorney Luiz to represent me to the board and tell the board of my complaints fully expecting a board reaction and board protection from Defendant Collin's and Erteschik's retaliation.  Attorney Luiz did none of that but he did falsely or negligently informed me that my job was safe. He also advised me not to contact the board president at the time, Sharon Smockhoffen as he would take care of it. That was bad advice as Ms. Smockhoffen would have been the best person to contact to get the board's participation in aiding and protecting me from retaliation.

186.     June of 2018, I contacted HDRC board members to let them know what was going on at with Defendant Erteschik and Collins, the Sex harassment/retaliation and missing money. Defendant Grant, Defendant Markley and Defendant Luiz. have all engaged in a campaign of retaliation

against Plaintiff for reporting a Title VII of the civil rights Act of 1964 sexual harassment and retaliation by the agencies administration and monetary mismanagement and the board thereafter engaged in tortious and criminal actions against Plaintiff Bassett for reporting those above complaints and violations and/or breach of State and Federal law and violation of the State's Whistleblowers Protection Act.

187.     Defendant Collins acts of scornful retaliation and harassment included orders to slowly close down operations at the Maui office by eliminating litigation cases at intake, outsourcing major litigation stop sending or assigning cases to Plaintiff, beginning around May of 2018, about the same time that Defendant Collins had put her properties up for sale, in a deliberate act of constructive termination.

188.     On information and belief, Defendant Collins also isolated Plaintiff in the workplace on or about May of 2018 by "ordering" and threatening all staff to cease all communication with Plaintiff, unless cleared or necessary. Plaintiff could not get staff or board members to return emails or phone calls after May of 2018.

189.     On information and belief Defendant Collins had put her Honolulu properties up for sale round April of 2018, preparing to leave the island and has since sold her property or properties in Hawaii.

190.     Defendant Collins quit her position at HDRC as of 10/20/2018 and made plans to spend time on the East coast.

191.      On information and belief Defendant Collins intends to retire in Las Vegas in a very large home.

192.     Defendant Collins had exclusive control and access to HDRC finances and budget which in 2017 was over $1.7 million dollars plus a $200,000 carryover surplus from 2016 and approximately $90,000 in agency fee revenues  from fiscal year 2016- 2017.

193.     Her exclusive financial control included control of all revenues, expenditures, saving bank accounts, accounting expenditure and credit entries, agency ledgers, checking accounts, and credit card accounts. There were no internal controls or oversight and her financial activities were done without supervision or and done without expense and income verification, without management audits, internal audits, ledger reviews.

194.    The agency goes through an unverified audit annually but has just posted the 2017 annual report one year overdue and which contains glowing errors.

195.    At the end of fiscal 2017, Defendant Erteschik informed the staff that no bonuses would not happen since the administration had spent the agency into the red. Defendant Erteschik informed Plaintiff personally that the agency was $80,000 in the red by end of fiscal 2017 in October of 2017. The 2016-2017 annual report that came out on or about November 2018 incorrectly shows that the Defendant HDRC had about a $200,000 carryover.

196.    Plaintiff is informed and believes that Defendant HDRC has not filed its form 990 for the 2017 year as of early December 2018 around 9 months overdue.

197.    Plaintiff believes and alleges that Defendant Erteschik is using revenues from the 2018 tax period to cover for deficits in the 2017 tax year.

198.    Administrative assistant Defendant Miyahara and IT administrative assistant Ron Baltero have check signing authorization.

199.    Plaintiff is informed and believe and hereby allege that there was a significant and unaccounted for deficit, which basic math would indicate would be close to over $280,000 at the end of fiscal 2017 per the personal reporting to

Plaintiff by Defendant Erteschik on or about late August or early September of 2017, including a report that the agency was $80,000 in the red as of October of 2017.

200.     Plaintiff Bassett had informed Defendant Erteschik during the phone conversation in late August or early September 2017 that there was possible or likely monetary mismanagement at the agency which could include, siphoning, personal use or embezzlement (a crime).

201.      Plaintiff asked Defendant Erteschik to personally check with Defendant Collins to trace the excess expenditures.

202.     During that same phone conversation Defendant Erteschik told Plaintiff that the Plaintiff and Plaintiff's wife, Garilyn Bassett, a HDRC contract worker, who has experience reconciling bank ledgers, an accounting associate for a large hotel and has substantial banking auditing, and ledger auditing experience could have access or copies of the ledgers, books and banking statements to do an internal audit to trace the unbudgeted spending and missing carryover to ensure that there was no monetary mismanagement. Defendant Erteschik told Plaintiff during that phone conversation that Plaintiff could have access to the agencies financials.

203.    Soon thereafter the above referenced phone conversation, Defendant Erteschik informed Defendant Collins of my report and his consent for an unofficial audit, he contacted Plaintiff and he withdrew his consent to allow Plaintiff and Garilyn Bassett to have access to the agencies financials. Defendant Erteschik informed Plaintiff that Defendant Collins wanted me fired on the spot for just asking, which is a violation of the Whistleblowers Protection Act, if true. Defendant Erteschik also informed me during a later phone conversation that I would/could be fired if I ever mentioned the ledgers again.

204.    Plaintiff now realized that Defendant Erteschik was in Defendant Collins' camp and most likely complicit in the apparent alleged financial mismanagement.

205.    Defendant Collins has retaliated and created a hostile work environment against Plaintiff Bassett because Plaintiff Bassett had rebuffed her drunken sexual demands which occurred on or about June 16th, 2016 at a conference in Baltimore Maryland. Defendant Collins further retaliated for reporting Collin's retaliation and activities which created a hostile work environment. Defendant Collins further engaged in retaliation against Mr. Bassett for reporting budgetary mismanagement by Collins to Defendant

Erteschik.  of which Mr. Erteschik is complicit, including other illegal and tortious activities against Plaintiff Bassett. Now Plaintiff has thrown another log on the fire.

206.

207.    Plaintiff Bassett did not want to report the sexual harassment out of shame, embarrassment and stigma and also because of the backlash which would come from making such a report, as Defendant Collins has taken over the Directorship of the agency when Defendant Erteschik abandoned his Executive duties.  Defendant Erteschik considers Defendant Collins to be an essential employee as Defendant Erteschik informed Plaintiff Bassett that he can't do his job without Defendant Collins.

208.    When first informed Defendant Erteschik of the initial sexual harassment on about July of 2017, Defendant Erteschik informed Plaintiff Bassett that, "Defendant Collins must have been very drunk to do that to you," and Plaintiff Bassett responded, "yes, she was hammered." Defendant Erteschik then replied to the report of harassment by Defendant Collins that, since "I wasn't there so there is nothing I really can do." I told Defendant Erteschik that he does know as Plaintiff has just told him that it happened. I informed Defendant Erteschik at that time of the initial report that I did not

want Defendant Collins disciplined or fired, but that I insisted that the threats of termination and other threats, insults and defamatory statements must end.

209.    Defendant Erteschik failed to any take action to address or stop the harassment from July of 2017 to the present and in fact became complicit in the retaliation.

210.    After I reported the harassment and retaliation to Defendant Erteschik, he informed Plaintiff Bassett on or about November 23rd 2017 or later that Defendant Collins demands that Defendant Erteschik to engage in harassing Plaintiff Bassett by making unreasonable demands of Plaintiff Bassett and further engage in hostile, humiliations, scolding remarks, threats and insults.

211.    Defendant Erteschik informed Plaintiff Bassett at that same meeting on November 23rd 2017 or later, that he feared Defendant Collins as Defendant Collins, in his words, "can hurt him." Defendant Erteschik and Defendant Collins have a relationship was detrimental for the corporations operations and to its employees.

212.    Defendant Erteschik not only failed to investigate, address, and/or stop the retaliation and harassment, Defendant Erteschik joined in with Defendant Collins and engaged, participated and colluded with Defendant

Collins and subsequently, along with Defendant Miyahara, Defendant Grant

and Defendant Markley engaged in further retaliation and harassment against

Mr. Bassett for reporting Defendant Collin's sexual harassment and retaliation

for reporting such and such activity continued through his wrongful discharge

on July 13th 2018 and thereafter. Such further harassment and retaliation for

engaging in protected activity has caused Plaintiff Bassett emotional,

psychological, mental anguish and financial harm.

213.     retaliation for reporting budgetary and financial mismanagement by

Collins.  Defendant Erteschik was and still is complicit, including other illegal

and tortious activities against Plaintiff Bassett.

214.     Mr. Erteschik fired Plaintiff  Bassett  on July 13th, 2018, just hours

after he completed drafting his entire billing portfolio (around $300,000.00

more or less) per the demands of  Erteschik and board president, Andrew

Grant. Plaintiff Bassett was informed that he was immediately fired because he

requested Defendant Erteschik, HDRC Executive Director, through an email,

to please ask Defendant Miyahara to retract her defamatory statements. An act

which all employees are entitled to do under HDRC's employee policies. The

firing had been planned for weeks. Defendant Erteschik contract Defendant

Shawn Luiz to take over my case load weeks before I was fired, the agency

quit sending me new cases several weeks before the firing and within hours of finishing my billing portfolio, the dismissal letter was sent out along with my cobra package. ($900 a month to continue my medical insurance).

215.   Plaintiff Erteschik admitted to me during a phone conversation that he defamed me by telling the board on or about the end of fiscal 2017 that the $50,000 to $80,000 budget shortfall of fiscal 2017 was my fault or partially my fault because I failed to bring in the shortfall. Balancing the budget is not the legal staffs responsibility. During fiscal 2017 Plaintiff Bassett brought in nearly $90,000, more or less, which made it a very good year and an accomplishment not equaled by any staff member or attorney in the history of the agency. What should have raised concerns by the board was that the year started with a $200,000.00 plus surplus, plus my $90,000.00 of revenue plus the $50,000-$80,000 shortfall which means that about $350,000.00 of unexplained revenue losses occurred. Defendants Erteschik Erteschik and Ann Collins scapegoated and defamed Plaintiff Bassett to explain the massive unexplained deficits which irreparably damaged Plaintiff's Bassett's reputation to the board and held me out to ridicule and led to further retaliation and harassment by the board and Defendant Erteschik and Collins.

216.    Defendant Erteschik  also agreed to let me look at banking statements and the ledgers.

217.    Defendant Erteschik instead  alerted Defendant Ann  Collins of my report.

218.    The Executive Director thereafter told me that Ann Collins ordered Erteschik to fire me on the spot just for asking.

219.    Erteschik also told me that I would be fired if I ever mention "the books" again.

220.    Erteschik is now threatening to fire me again. H

221.    The board is balking at a forensic audit in support of Erteschik and Ann and both Erteschik and Ann Collins and even the president and vice president of the board are retaliating against me for being a whistle blower.

222.    On information and belief, Defend Collins had also given our PAVA HAVA contract to her old girl friend and non-employee, Kathleen Delahanty (68), Erteschik told me that he has given a "contract" to her for $35 an hour.

**223.**    HDRC is about one third of usual staffing. HDRC used to have as much as 10 attorneys and 12 advocates working at the same time back at around 2000.

## PLAINTIFF IS A WHISTLEBLOWER

## Under Hawaii's WHISTLEBLOWERS' PROTECTION ACT at HRS §378-61-62

224.     On or around late August or early September 2017 Plaintiff Bassett was informed by Defendant Erteschik, via a telephone call that the agency was broke and in the red and there would be no bonuses for the 2017 year.

225.     I always receive a needed bonus of at least $4000.00 annually. I responded to Defendant Erteschik that the agency carries over at least $150,000 (actually closer to $200,000-$250,000) every year and that I just had deposited a check for over $67,000 in fee revenues.

226.     I told defendant Erteschik that I wanted my bonus. I told him that I had just had deposited a check for over $67,000 and that money should be there. I felt that there were massive red flags with the lack of oversight and I was a bit angry thinking that Defendant Erteschik and Defendant Collins had the temerity to squander to agencies Christmas bonuses for staff who were expecting the Directors to act responsibly with the agencies money.

227.     I thereafter immediately asked Defendant Erteschik to verify with the bookkeeper, who is also Defendant Collins, the Program Director, to reconcile the missing funds.

228.     Plaintiff told Defendant Erteschik on the same phone call, that

there's something wrong with the agencies financials, either gross financial

mismanagement, gross financial negligence, or personal use of agency funds

(theft of federal grant money; 18 U.S. Code § 666 - *Theft* or bribery concerning

programs receiving *Federal funds*).  I told Defendant Erteschik that there is no

financial oversight or internal controls of expenditure verification, and the

possibility of some fraud or mistakes is very high.

229.     I also asked Defendant Erteschik, at that time, if I could, along with

my wife, Garilyn Bassett, who was then a contract worker for HDRC, do an

inside audit for fiscal 2017. Garilyn Bassett has auditing experience in

reconciling banking ledgers and is currently an Account Associate for the

Hilton Grand Wailea on Maui helping with the hotels audits. We would do the

audit on our own time without cost or charge. Defendant Erteschik took a

hostile tone but agreed to my internal audit or review.

230.     My report to Executive Director, Defendant Erteschik was sufficient

report of a violation of an illegal or unlawful activity to an employer, which is

covered under the Whistleblower's Protection Act (HRS §378-62, §378-63 et-

al).

231.     Defendant Erteschik at first agreed that I could do an inside audit/review for 2017 and he would make HDRC's and ledgers and banking financials available to me and my wife

232.     Plaintiff Bassett is an "Employee" under the act as he is "a person who performs a service for wages" HDRC is an "Employer" under the act as HDRC is an employer as it "means a person who has one or more employees. Employer includes an agent of an employer a person who has one or more employees." HDRC in an Employer and Defendant Erteschik, Collins, Grant, Markley and Luiz are all agents of the employer. Defendant HDRC come within the act because HDRC is a "Person" (which) means an individual, sole proprietorship, partnership, corporation, association, or any other legal entity. HDRC is a corporation.  A law enforcement agency or any member or employee of a law enforcement agency, I did contact The Attorneys General, HPD, City Prosecutors, and even the FBI and later the Inspector General for the US DHHS and report financial mismanagement as a crime;

233.     Defendant Erteschik thereafter reported to me that he contacted the bookkeeper, Director of Programs, Defendant Collins and reported my report and concerns.

234.     Defendant Erteschik did not thereafter address my complaint and report of a possible crime or allow Plaintiff to do an internal audit or review. Defendant Erteschik did not investigate my report of illegal financial violations. Instead, Defendant Erteschik informed Defendant Collins of my report. Defendant Erteschik informed me the next day or so, that Defendant Collins' insisted that I should be "*fired on the spot*" for reporting to the employer about a violation of law regarding the missing funds, the theft or possible theft, gross negligence or gross mismanagement of agency finances.

235.     Defendant Erteschik agreement with Plaintiff to allow me to review the ledgers and the banking financials was withdrawn, by orders of Defendant Collins.

236.     Defendant Collins' made it clear that she wanted me fired for refusing her sexual advances from on June 16th 2016 onward, so,  at that time it was no surprise that Defendant Collins further expressed her desires and made it known that she wanted me fired.

237.     The surprise to Plaintiff was that Defendant Erteschik also echoed the same sentiments as Defendant Collins, in that, sometime thereafter in September of 2017, Defendant Erteschik told me on the phone that Plaintiff (I)

would be terminated if the Plaintiff (I) would ever mention the "books" or "ledgers" or the agencies finances again.

238.     It became clear to Plaintiff that Defendant Erteschik was either somewhat or somehow complicit in the mismanagement of agencies federal grant revenues or had direct knowledge of the mismanagement of the agencies funds. That would be a misprision of a felony.  §378-62 Discharge of, threats to, or discrimination against employee for reporting violations of law. An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:

239.     (1) The employee, or a person acting on behalf of the employee, reports or is about to report to the employer, or reports or is about to report to a public body, verbally or in writing, a violation or a suspected violation of:

240.     (A) A law, rule, ordinance, or regulation, adopted pursuant to law of this State, a political subdivision of this State, or the United States;

241.     Plaintiff Was Completely Current In His Job Duties When He Was Discharged

242.     The kingpin complaint which Defendant Collins harassed and retaliated against Plaintiff was money.  Defendant Collins constantly

disparaged plaintiff was that he was not getting money into the agency fast enough for us billing.

243.    In Plaintiff's 20 year career, I was probably never fully caught up in getting billing statements out. That was due for to three factors. The fact that Plaintiff was the only full time litigation attorney who was doing due process hearings, federal lawsuits and federal appeals state wide made it difficult to find the time to completely catch up. Billing is very time-consuming.

244.    The second reason which is a more compelling reason was the risk of waste.  What Plaintiff was doing was bringing in about $90,000 cash every year which is more than a salary. Plaintiff felt that bringing in more than 90,000 would lead to excessive waste or financial mismanagement as it had done in the past. There have been instances in the past that it was clear that management (executive Director and Ann Collins including Kathleen Delahanty would take vacations with a large cash influx of unregulated funds. That happened around 2008 when administration staff took vacations to Japan and elsewhere with the revenues and other instances when the director would use attorney fee revenues for expensive remodeling on rental properties or apparently hire friends on contracts. Plaintiff felt that keeping the revenues around hundred thousand dollars under would avoid financial waste.

245.     The third reason was that Plaintiff always wanted to make sure there's enough billing revenue for every year so that there would not be shortages during slow years. Since settlement agreements have a six-year statute of limitations on enforcement there was never was any logical reason to bring in more than $100,000 year my billing portfolio was like having money in the bank for the agency for slow years.

246.     In 2015 Plaintiff brought in about $120,000-$140,000 cash per the HDRC's 990 filing and in 2016 Plaintiff brought in between $90,000 to maybe $120,000 cash anyhow you calculate. Per HDRCs 990 over $140,000 were brought in for fees per HDRC 990 filing.

247.     Plaintiff's portfolio of over $300,000 from old cases, and some as old as to three and four years and a couple were older. The problems that I would continually get favorable settlement agreements every year to the portfolio would build up. So, it was shame on me for prevailing or settling favorably so many cases.

248.     Starting around August 2017, defendant Collins became incessant about getting money, and more money, and more money, from my billing portfolio. It was to the point of becoming bizarre and the demands took on a very retaliatory demeaning degrading humiliating tone.

249.    I was the only attorney in the history agency back from 1977 the present to bring in revenues consistently over my salary.  Defendant Erteschik never litigated a case as lead counsel and never prevail in any due process hearings. It didn't matter as attorney revenues are not part of a public interest attorney's job.  Erteschik never had to worry about billing because he never won any cases.

250.    Attorney Jennifer Patricio was at the agency for seven years and maybe brought in a total of $29,000 during whole seven years which is a little more than $4000 average and once she left the agency I was required to collect over $20,000 of her late billing and Patricio was never scolded or disciplined over her billing or her lack of litigation success. It is just not part of the job.

251.    There have been about 20 attorneys that have come and gone in the last 20 years and 90% of failed to bring in any revenues at all and nobody was ever disciplined over not bringing in revenue. Attorney Patty Clarkson is the only attorney that prevailed in a due process case and brought in $40,000 in her first year which is remarkable, but she was targeted by defendant Collins because Defendant Collins did not like her, could not control her and she was friends with Plaintiff. She was subjected to a hostile work environment and decided to leave the agency for reasons unrelated.

252.     I believe it was 2008 or thereabouts Plaintiff bill for over $300,000

in the party was thrown in plaintiff's honor in 2018 plaintiff billed for over

$300,000 was possibly scolded me and retaliated against eventually was fired.

253.     On July 12, 2018 plaintiff was completely caught up in all his

billing which was for the fiscal year 2018 Plaintiff billed for over $330,000.

254.     No party this time. The administration through Board President

Andrew Grant was demanding that I finish all billing by late July 2018 or

subject to discipline. A board member ordering staff around?

255.     I knew that once my billing was finished I would be fired. I had

informed board president Defendant Grant and vice president Defendant

Markley that I would be fired once my billing was done because that is all that

Collins and Erteschik wanted. Then Collins would have her vengeance.

256.     July 13, 2018 Plaintiff was fired on a pretext. Because Plaintiff sent

an email to Defendant Erteschik asking him (please) if he could please go to

Defendant Miyahara and tell her that Plaintiff is demanding that she retract her

defamatory statements from May 1, 2017.  Per the employees manual all staff

are entitled to a hostility free and a defamation free work environment. The

executive director is responsible to ensure that happens. Didn't matter, they fire

me.

257.     Plaintiff was threatened with discipline or termination by Defendant

Collins and Defendant Erteschik if Plaintiff didn't bill faster in August of 2017.

Plaintiff substantially complied and the threats were withdrawn in September

of 2017. Plaintiff was thereafter threatened with retaliation again by the agent

of Defendant Collins and Erteschik, board president, Defendant Grant with

discipline in June of 2018.

258.     Plaintiff did bill faster and was completely caught up and finished

on July12th, 2018, ahead of schedule.

259.     Plaintiff had completed successfully all administrative request to

finish billing, against Plaintiff's strong admonition not to bill the whole

portfolio as it would leave nothing for next for the next fiscal year and there

was a strong likelihood of financial malfeasance if that much cash flooded into

the agency at once.

260.     Attorney fees are deposited and commingled with regulated federal

and state grant funds in HDRC savings or checking banking account. Those

attorney funds, therefore have lost their identity as non-regulated funds.

261.     HDRC does not have a treasurer on the boards as required by law

for non-profits to monitor agency finances.

262.     The previous board Treasurer was Defendant Erteschik' ex-girlfriend and agent, Defendant Markley, and for three years.

## Plaintiff was defamed by Defendant Miyahara and Collins

263.     Defendant Miyahara falsely alleged employee misconduct by Plaintiff which indicated that Plaintiff was involved in "behavior incompatible with the proper conduct of his business, trade or profession" and therefore the false reporting of the defamatory complaint published to Defendant Collins and Defendant Erteschik was therefore defamation per se, meaning damages are assumed and do not need to be proven.

*264.*     Defendant Miyahara's false disciplinary report against Plaintiff Bassett contained false defamatory statements in that she wrote to Ann Collins in an email; *"he (Plaintiff) said Ann was just being a "bitch" to him to which I replied, no, this doesn't apply to only you, this applies to everyone To which he replied, yeah but she still a bitch. Then, Matt starts going into this "crazy rant" and was saying something like "there's more to the story than that , that the financial books and records are messed-up" I told him that he doesn't know what he's talking about and that Ann & I both work tirelessly to keep the books in order. Then I said "Shut —up 'cause you don't even know what you're talking about". I said, I not talking to you anymore, then I slammed the phone*

69

*down on his ear. I think there is something very wrong with Matt. He doesn't*

*sound well, he sounds very combative and delusional. Like his rant about the*

*books? He lives on Maui, has nothing to do with the books, and probably never*

*read an annual report of ours. It is my personal opinion that Matt's mental &*

*physical being has changed drastically over the past several months and even*

*the past couple years."*

265.    The telephone conversation on May 1st, 2018 between Plaintiff

Bassett and Defendant Miyahara began with Defendant Miyahara speaking to

Plaintiff with a rambling, patronizing and demeaning series of scolding's, of

which included unnecessary platitudes about when check requests were due an

how I would be punished for late requests. Defendant Miyahara's attitude,

demeanor were completely inconsistent with proper office decorum.

266.    Defendant Miyahara call also included a series of, "Ann says"

comments regarding the Plaintiff's conduct, some of which were patronizing

and demeaning and "Ann says" comments that were factually inaccurate, for

example Defendant Miyahara stated, in a paraphrase that "Ann say, that we are

getting less federal funding now so we have to be careful…, which is false in

that our federal funding has been stable for the last few years.

267.     On information and belief, Defendant Collins promotes the false perception as propaganda of the HDRC receiving less revenue to ward off questions about loss of staffing, loss of bonuses and missing and/or unaccounted for agency funds.

268.     Everything in Defendant Miyahara's report is patently false with the exception of, "this doesn't only apply to only you," which Defendant Miyahara did say. Plaintiff also told Defendant Miyahara, during the March 1st 2018 telephone conversation, "that there is a lot of thing going on at the office of which you are unaware." Other than that, Defendant Miyahara's complaint is a defamatory fabrication, especially regarding dispersions about my mental health and fitness.

269.     Plaintiff never used the phrase; "bitch to me." In Plaintiff's conversation to Defendant Miyahara on May 1st. 2018. Plaintiff used the phrase, "jerk to me." The word "bitch" has sexist connotations and is not appropriate to use with junior staff and it is a word that Plaintiff would never, and has never used to junior staff, especially to Defendant Collins' close friend and personal aid, Defendant Miyahara.

270.     Plaintiff used the word "jerk" to explain Defendant Collin's hostile and retaliatory behavior and attitude toward Plaintiff to Defendant Miyahara, as "being a jerk" is sex neutral.

271.     Right after Plaintiff used the word "jerk to me," on the phone to on May 1st, 2018, Defendant Miyahara began screaming, "no, no, no, no, no, no, no, no, no, no." at least ten times to Plaintiff Bassett. She then immediately hung the phone after her rant. Miyahara's rant of screaming "no" was so bizarre that it left the Plaintiff shaken.

272.     Plaintiff never mentioned any form of financial mismanagement during to Defendant Miyahara during the May 1st, 2018 conversation. Defendant Miyahara would be the last person in the office that Plaintiff would complain about Defendant Collins' failure to manage the agencies finances properly.

273.      Defendant Miyahara's only interaction with Plaintiff, during the last several years, was limited to receiving his check request, making monthly flight and hotel reservation, receiving Plaintiff's monthly timesheets and some light copy work during monthly trainings. Social talk would be limited to discussions about her Jack Russell terrier.  About 4 minutes of time per month would be spent in Plaintiff's communication with Defendant Miyahara.

274.   Plaintiff's communications with Defendant Miyahara were always polite, professional and cordial.

275.   I am informed and believe that Defendant Miyahara submitted a complaint via email, on May 1st, 2018, first to Defendant Collin's, Plaintiff's harasser, wherein the complaint sat in Defendant Collins mailbox for about 4 hours.

276.   Defendant Miyahara describing Plaintiff as "delusional" was done without any basis in fact and is patently false.

277.   Defendant Miyahara describing Plaintiff as being "combative" is also done without any basis in fact and is false.

278.   Defendant Miyahara's description of Plaintiff's physical and mental health as deteriorating is materially false and bizarre.

279.   Defendant Miyahara's written complaint was libel and constitutes defamation per se.

280.   Plaintiff has not worked in the Honolulu office since the year 2000. Defendant Miyahara had only seen Plaintiff for about a couple of minutes every month up until December of 2018, when Plaintiff's Honolulu trainings ended. Thereafter, Defendant Miyahara had not seen Plaintiff Bassett for over 4 months. Defendant Miyahara now falsely describes Plaintiff's full medical,

mental health and social condition without seeing the Plaintiff for over 4 months using defamatory language.

281.     Plaintiff is informed and believes Defendant Miyahara's complaint was written by Defendant Collins. The telephone conversation happened on around 10:30 am on May 1st. 2018 and a complaint was emailed from Defendant Miyahara's email account to Ann Collins' email account sometime around 12:00 pm.  Defendant's complaint then went back to Defendant Miyahara email account from Defendant Collins email account close to 4:00pm. Then Defendant's "reviewed and revised complaint" was then first sent at around 4:00 p.m. to Defendant Erteschik and then it was just before 5:00 pm that Defendant Erteschik sent Plaintiff the email of Defendant Miyahara's complaint with a notice of probation to Plaintiff. The probationary email was clearly written by Ann Collins using Defendant Erteschik's email account under his name.

282.     Plaintiff was never contacted regarding the complaint and never had an opportunity to present Plaintiff's side of the telephone call until after Plaintiff was notified, that he was on probation.  Plaintiff Bassett is therefore informed and believes that Defendant Miyahara had acted at the direction of Defendant Collins, with the full co-operation and complicity of Defendant

Erteschik to make a false and defamatory, written published statement against

Plaintiff Bassett as to constitute libel defamation per se as demeans his

worthiness in his business as an attorney.

283.   The false defamatory statements caused Plaintiff emotional and

financial harm as the probation from this incident was a direct link to

Plaintiff's wrongful discharge on July 13th 2018.

284.   The false defamatory statements were communicated and otherwise

published to 3rd parties, to wit, Defendant Ann Collins and Defendant to

Erteschik and/or Jane Miyahara.

285.   Plaintiff contacted Defendant Erteschik regarding the pretense

papering of Plaintiff's discipline file at around 11:30 pm on May 1st 2018

when Plaintiff first became aware of the probationary action.

286.    Defendant Erteschik informed Plaintiff at that time that Defendant

Collins burst into his office and demanded that Plaintiff Bassett be placed on

probation, that it was not his idea.

287.   On May 1st, 2018, Defendant Erteschik informed Plaintiff that

Defendant Erteschik was not free to "disobey" Defendant Collins demands and

it (the probation) was all her idea. Defendant Erteschik did what Defendant

Collins' (Plaintiff's sexual harasser) demanded without an investigation, and

without contacting Plaintiff and without following disciplinary protocols protecting staff against false accusations as written in the employee manual.

288. Defendant Miyahara's complaint was going to be used as a pretext by Defendant Collins, Plaintiff's sexual harasser, and Defendant Erteschik to place Plaintiff Bassett on disciplinary probation for using the word "jerk" in a conversation with the office assistant. Eventually the pretextual probation would be the basis of Plaintiff's pretext firing.

289. Defendant Miyahara and Defendant Collins did not email Defendant Miyahara's false and defamatory disciplinary report against Plaintiff to Defendant Erteschik until after 6 hours (around 4:30 p.m.) after the original conversation occurred.

290. Defendant's Miyahara's false complaint was given to Defendant Collins first, and sat with Collins for about 4 or so hours before being returned to Defendant Miyahara then forwarded to Erteschik at around 4:00pm on May 1st. 2018.

**291.** The wrongful acts against Plaintiff constituted defamation and was act of retaliation against Plaintiff for reporting Defendant Collins' sexual misconduct, retaliation and harassment in violation of Title VII of the Civil Rights Act of 1964 (Sec.701(a)) and additionally the wrongful, false and phony

disciplinary acts of the 3 Defendants, Erteschik, Collins and Miyahara

constitute a violation of the Whistleblowers Protection Act.

## DEFENDANT ANN COLLINS, LOUIS ERTESCHIK and MARKLEY MADE FALSE STATEMENTS AND FALSE ACCUSATIONS ABOUT PLAINTIFF

## HDRC PREPARES TO TERMINATE PLAINTIFF

## BOARD PRESIDENT ANDREW GRANT AND BOARD VICE PRESIDENT MARYELLEN MARKLEY MADE FALSE And Defamatory STATEMENTS ABOUT PLAINTIFF AND SO were complicit IN RETALIATION FOR REPORTING POSSIBLE CRIMINAL MISMANAGEMENT OF THE AGENCIES FINANCES AND

292. By June of 2018, it was clear to Plaintiff that Defendant Collins and

Erteschik were not acting in good faith with the "employment contract" and

were building up a pretext discipline file to justify a wrongful firing of Plaintiff

Bassett.

293. The pretext firing was going to be done, regardless of Plaintiff's

work performance.

294. Plaintiff Bassett decided to contact the HDRC's board president, Defendant Andrew Grant, and inform him that Plaintiff was a victim sexual harassment by Defendant Collins and victim retaliation for reporting sexual harassment by both Defendants Collins and Erteschik and inform him of the financial improprieties and financial crimes that were occurring at the agency by Defendant Collins and Erteschik.

295. Plaintiff informed Defendant Grant of the serious financial irregularities and poor management and accounting activities that also were contributing to the financial mismanagement and theft, which were emanating from the said poor financial management activities of Defendants Collins and Erteschik.

296. I informed both Defendant Erteschik, Grant and Markley that the Defendant HDRC did not have any financial controls or oversight, either by internal or external auditing verification. That Defendant Collins had exclusive control of the agencies 2 million dollars in annual fiscal assets.

297. I informed Defendant Grant that Plaintiff was a Whistleblower and had contacted law enforcement regarding the possible illegal financial activities.

298. At all times Defendant Grant knew that Plaintiff was a Whistleblower and protected by WHISTLEBLOWERS' PROTECTION ACT (HI Rev Stat 39; (2011 through Reg Sess, Title 21, 378).

299. Since his review of April of 2018. Plaintiff told Defendant Grant, that besides a board investigation and protection, Plaintiff also wanted and demanded that Plaintiff's complaint to the board remain confidential as Plaintiff was certain he would be fired if Defendants Collins and Erteschik knew of Plaintiff's board contact and board report of administration malfeasance.

300. Defendant Grant failed to follow Plaintiff's instruction regarding a demand of confidentiality to Plaintiff's personal and financial detriment.

301. Defendant Grant promised an external investigation but failed to deliver any form of legitimate investigation.

302. Instead of investigating Defendant Collins and Erteschik, Defendant Grant retaliated against Plaintiff Bassett and colluded with Defendant Erteschik and Defendant Collins, in aiding them to have Plaintiff wrongfully terminated.

303. Defendant Grant promised an outside investigation but Instead of doing an outside investigation or a forensic audit, the board decided to use and/or hire Defendant Erteschik's old girlfriend, Defendant Markley, and fake

imposter psychologist and con artist who was  the Board's vice president and previous board "treasurer" to do a sham investigation.

304. Plaintiff Bassett warned Defendant Grant not to retaliate against a victim of sexual harassment or a person covered by the Whistleblowers Protection Act as there are stiff penalties for violating those provision of law through his emails in June of 2018.

305. Plaintiff's warnings to Defendant Grant went unheeded.

306. Defendant Grant refused to communicate with Plaintiff Bassett either through the direction of HDRC administration or out of ignorance.

307. Defendant Grant contacted Plaintiff in mid-June of 2018, and continued with his retaliation by insisting that all of Plaintiff's unfinished billing to be finished within 30 days before any investigation will commence.

308. By June of 2018 Plaintiff was essentially current in Plaintiff's billing catalogue, save a few cases, including Defendant Erteschik had indicated that Plaintiff's progress in billing was satisfactory

## HDRC PREPARES TO TERMINATE PLAINTIFF

309. Plaintiff informed Defendant Erteschik on July 2nd 2018 via a recorded phone conversation that the bogus negotiations for a full release were over. That the offer of a full and free release for the agencies violations of Title

80

VII of the Civil Rights Act of 1964 was withdrwn over due to Defendant

Erteschik's and Collins' bad faith. That Plaintiff was not goingto give the

Defendants a contract with a settlement of a full release if the Defendant's

intended to breach the contract and fire Plaintiff anyway. So, that if they

(Defendant's) wanted a release from Plaintiff now, they would now have to

buy it. The Plaintiff  then told Defendant Erteschik that Plaintiff filed a

complaint with the EEOC on or about July 1st, 2018. Defendant Erteschik

asked me in response to that report of filing an EEOC complaint that, "would I

like to be fired or if I would prefer to quit."

310. Defendant Erteschik in fact responded to Plaintiff's inquiry as to,

"what grounds was my (the Plaintiff's) firing to be based" during the July 2nd

2018 recorded telephone conversation? Defendant Erteschik stated in response,

that, "I don't know, I don't know."

311. Defendant Markley was contracted or paid or otherwise induced to

draft a pretense frictional cover report on a pretense investigation either on or

about June or early July of 2018, for the purpose of clearing Defendant

Erteschik and Plaintiff Collins of any wrongdoing and also for implicating

Plaintiff Bassett for "false reporting of administrative malfeasance" to facilitate

Plaintiff's dismissal/ separation or firing from HDRC.

81

312. Plaintiff Bassett was cautioned in early July of 2018 by staff or other people familiar with the situation in HDRC's office, and familiar with Defendant Markley that Defendant Markley was instructed by Defendant Collins and Defendant Erteschik to bait or entice Plaintiff Bassett to become angry by using offensive and accusatory language during the July 6th, 2018 interview. That any angry outburst in response to insults would be reported as a complaint to Defendants Collins and Erteschik and used as a basis to put Plaintiff on a second probation, and to fire Plaintiff.

313. The meeting between Markley and Plainiff took place on Maui on July 6th, 2018 with Plaintiff's wife in attendance as a witness. Defendant Markley did attempt to anger Plaintiff Bassett with badgering,   insults and hostility, in an effort to upset and anger Plaintiff Bassett so that Plaintiff Bassett would respond adversely, which would be reported as a complaint by Defendant Markley which could be used as a basis to fire Plaintiff Bassett. Plaintiff Bassett did not take the bait. Plaintiff's wife, Garilyn Bassett scolded Defendant Markley for her offensive accusations against Plaintiff Bassett.

314. Defendant Markley did in fact make hostile, patronizing, insulting false and defaming language against Plaintiff Bassett during the interview on July 6th in a clear attempt to insult demean, patronize and defame Plaintiff.

82

315. Maryellen Markley requested that Plaintiff Bassett and his wife refer to her as "Doctor," or "Doctor Markley."

316.

317. Defendant Markley admitted on June 6th, 2018 at the end of the meeting that Markley had no credentials. Defendant Markley boasted that it was okay to pretend to be a psychologist, because she was not practicing psychology as a licensed activity.  In fact, it is not okay.  It is still a misdemeanor to falsely claim to be a "psychologist" without first obtaining a license in Hawaii (HRS Chapter 465-2).

318. Defendant Erteschik in fact referenced, "abuse of board members," without details, in Plaintiff Bassett's letter of dismissal dated July 13th, 2018 even though there are no complaints from any board members in Bassett's discipline file.

319. Plaintiff Bassett conducted himself with professionalism consistent with the boards activities or lack there-of, in his communications with all board members. Plaintiff Bassett did give legal advice to Defendant Grant and Defendant Markley that that their activities may constitute retaliation against a Whistleblower and retaliation against a victim of sexual harassment in

violation of Title VII of the Civil Rights Act of 1964, which is illegal and could subject them to fines.

320. Giving good legal advice to retaliating board members is not abuse.

321.

322. The agency Defendant Erteschik and Collins) had stopped sending me cases (constitutes constructive termination) starting around April of 2018, about the same time Defendant Collins had placed her Honolulu properties up for sale.

323. That made it clear that Defendant Collins was getting ready to leave the state.

324. It was clear that Defendant Grant was working with Defendant Collins and Erteschik to have Plaintiff finish up Plaintiff's backlog of Plaintiff's casework so Bassett  could be fired without leaving unfinished attorney billing and that Defendant Collins could use Plaintiff's attorney fee revenues to cover for pilfered agency deficits in time for the annual report.

325. Defendant Grant has no authority to dictate staff activities, yet Defendant Grant demanded that the Director of Litigation complete a task within 30 days.

326. Defendant Erteschik insisted that the demand that came from the board be followed by Plaintiff even though he knew it made no sense, was done without authority, violated the employee handbook and violated the board code of conduct and that Defendant Grant had no authority to tell Plaintiff, a staff member and the Litigation Director, how to conduct his casework without over the direction of the Executive Director.

327. It was clear that the retaliatory actions by Defendant Grant was to act as cover so Defendant Collins or Erteschik could avoid a claim of hostile retaliation.

328. Defendant Grant, a board member, was supposed to be investigating Plaintiff's complaint and protecting the Plaintiff and keeping Plaintiff's complaint confidential, but instead, contacted Defendant Collins and Erteschik immediately and began to investigate and retaliate and collude with Defendants against Plaintiff per Collins and Erteschik permission to give the administration an excuse to fire Plaintiff for refusing a board demand or firing Plaintiff as he had finished his billing and was no longer needed for the retiring Defendant Collins.

329. Plaintiff Bassett knew the directive came from Defendant Collins as Collins favorite thing to do was to order Plaintiff Bassett to do things in 30 days. Defendant Erteschik was complicit.

330. Plaintiff Bassett knew if he did not complete the task in 30 days Plaintiff would be fired for not following an invalid directive from a board member who was retaliating against Plaintiff Bassett for reporting harassment and mismanagement.

331. Plaintiff Basset was additionally aware that if Plaintiff completed all his current case billings from cases in which Plaintiff received a favorable settlement agreement which promised Petitioner's attorney fees, (settlements are contracts with a six year statute of limitations for judicial enforceability) that he would be fired/terminated by defendant Collins and Erteschik as Defendant Collins had clearly intended to terminate Bassett after Plaintiff completed Plaintiff 's backlog of fee requests to cover for Defendant Collins' and Erteschik's financial shortages and self-dealing including any outright theft.

332.  Since July of 2016, Defendant Collins' made incessant hostile demands and threats against Plaintiff for more and more and more attorney fees. Those threats and demands began as retaliation for not complying with

and rejecting Defendant Collins' demands for sexual favors from Plaintiff Basset in Baltimore at the Baltimore Conference.

333. Board members have no authority to tell staff what to do. That is the exclusive duty of the Executive Director per Plaintiff's contract and the HDRC Employee Handbook.

334. By using Defendant Grant to retaliate against Plaintiff Bassett for making a report of sexual misconduct and reporting a violation of law would shield Defendants Collins and Erteschik against allegations of retaliation for Violations of Title VII of the Civil Rights Act of 1964 and the Whistleblowers Protection Act which would thereby be deflected onto Defendant Grant.

335. I had informed Defendant Erteschik in June of 2018 and informed Defendant Markley in July of 2018, that as soon as I completed Plaintiff's backlog of billing, (about 4-5 small recent cases at that time) closed all my cases, that Defendant Collins would demand that Defendant Erteschik fire me.

336. Plaintiff finished and was completely current with all billing on July 12th, 2018 (about $330,000 of billing for the 2018 fiscal year and about $535,000 total for the fiscal years from 2015 to July of 2018, which was a record task) and by early Friday July 13th, I received an email from Defendant

Erteschik that I was "separated." Not for billing, but for sending an email asking to be in a defamation free work environment.

337.  Defendant Erteschik fired me for the act of politely asking, in an email, that Defendant Erteschik to Defendant Miyahara and to tell Defendant Miyahara that Plaintiff Bassett was demanding that Defendant Miyahara withdraw her false defamatory statements.  An action which the Employee Handbook allows me to do.

338. Plaintiff was not fired for poor work performance.

339. Defendant Erteschik never explained to Plaintiff Bassett's how or why an email request to the Executive Director to request his help to end the hostile work environment at HDRC and have a retraction of a defamatory statement is abuse of staff. Simple answer is it is not abuse of a staff member.

340. All staff members are entitled to be free of defamatory statements and hostile work environment and sexual harassment or retaliation per the agencies personnel policy.  Nor did Defendant Erteschik explain why he failed to follow the agencies disciplinary policies when imposing discipline on Plaintiff Bassett.

341. Defendant Erteschik admitted in a telephone conversation that Defendant Miyahara's complaint against Plaintiff Bassett was "blown way out of proportion" but that he was not free to take me off of probation.

342. Defendant Erteschik had informed me in person on one of my last trips to the Honolulu office, on or about November 23rd 2017 that he did not care about the billing but Defendant Collins was constantly coming into his office demanding that Defendant Erteschik harass Plaintiff Bassett about bringing in more money.

343. During that same visit in November of 2017, Defendant Erteschik informed Plaintiff Bassett that he has to do what Defendant Collins asks him to do, regardless of the demand, because, and in his exact words, "she can hurt me." Defendant Erteschik will not tell me the basis of the apparent threat from Defendant Collins. Plaintiff Bassett is not aware if the comment is an admission of actual blackmail or just a fear of retaliation from Defendant Collins and it is most likely the later as retaliation is a constant weapon used by Defendant Collins to keep her staff aligned. Defendant Collins is an office bully

344. Defendant Luiz committed malpractice and retaliated against Plaintiff.

345. While Defendant Luiz was a board member, Plaintiff had technically retained Defendant Luiz in his capacity as an attorney when I asked him in September of 2017 to represent me to the board regarding my complaint of discrimination due to my sex and retaliation thereafter, including retaliation for making a report of financial mismanagement. Again in the summer of 2018 I contacted Defendant Luiz to further investigate Defendant's malfeasance and to protect Plaintiff from retaliation as it was clear that Defendant Erteschik and Collins was getting ready fire Plaintiff and report back to Plaintiff regarding his employment status.

346. During those contacts I asked Defendant Luiz for an investigation and for his legal advice.

347. I also asked Defendant Luiz for board protection regarding Defendant Erteschik and Defendant Collins' retaliation against Plaintiff Bassett for reporting their possible criminal financial mismanagement.

348. Plaintiff gave Defendant attorney Luiz a full report of the wrongful and unlawful activities Defendant Collins and Erteschik as I have investigated.

349. I gave Defendant Luiz a report of my activities, the activities of Defendant Erteschik and Collins and my legal defenses against Defendant Erteschik and Collins for their retaliation and threats of firing Plaintiff Bassett.

350. Defendant attorney Luiz gave me his legal advice after the last board meeting he attended on or about September or October of 2017 wherein Plaintiff was informed that Plaintiff was personally and professionally disparaged by Defendant Erteschik and Collins to the board members blaming Plaintiff for the Defendant's massive financial shortfall for fiscal 2017.

351. Defendant Luiz falsely advised Plaintiff that Plaintiff's job was secure and that I had nothing to worry about. Sharon Smockhoffen, board president at that time informed that me that Luiz's advice was false.

352. I relied on that legal advice of Luiz to my detriment, mentally, physically and financially in that I falsely believed that my job was secure.

353. Due to defendant Attorney Luiz's false and or negligent legal advice, I did not take alternative or other appropriate actions to save my job.

354. Defendant Luiz was a contributing element to my firing.

355. Defendant Luiz met with Defendant Collins and Defendant Erteschik in the HDRC office for a lengthy meeting about 3-4 weeks before my firing and signed a contract to take over my casework. I advised Defendant attorney Luiz that taking my position is a conflict of interest. It constitutes breach of attorney client privilege and loyalty to the client, among other things.

356. Defendant attorney Luiz was retained, per the HDRC contract or otherwise, to prosecute an unemployment insurance appeal against Plaintiff Bassett on regarding my wrongful termination involving all material issues which Defendant Luiz representing Plaintiff against the agency and Defendants.

357. Defendant Luiz is taking a case (Unemployment Appeal No. 18021572) against a former client on the exact same issues that I retained him to protect me from and Defendant Luiz is using our attorney client communications against Plaintiff Bassett. Defendant is knowingly and intentionally allowing Defendant's to use false defamatory testimony against Plaintiff causing Plaintiff to suffer extreme mental anguish.

358. The original unemployment investigator (Mr. Lee) found no merit to defendant HDRC's reasons for terminating my position and that all reasons stated were obvious pretenses, just as I had informed Defendant Luiz.

359. Therefore, Defendant Luiz has committed legal malpractice against Plaintiff Bassett and is being sued for such wrongful conduct.

360. Defendant Luiz had presented Defendant Markley, and Defendant Miyahara who knowingly perjured themselves at the Unemployment insurance appeal on November 6th 2018.

361. Defendant Luiz had presented Defendant Erteschik who also perjured himself and made false and defamatory allegations against Plaintiff Bassett which would normally alerted any sentient being that Defendant Erteschik was committing perjury. False defamatory testimony is illegal but it is privileged from civil suits.

362. Plaintiff Bassett was fired for asking Defendant Erteschik to please inform Defendant Miyahara that Plaintiff Bassett was demanding that she retract her defamatory statements against Plaintiff.  Something that Plaintiff is entitled to do.

363. Defendant Luiz now allowed Defendant Erteschik to defame Plaintiff Bassett by allowing Defendant Erteschik to falsely testify that Plaintiff Bassett was also fired because of concerns of his delusional mental health and slothful appearance on the Novembe4rt 6th 2018 Unemployment Insurance appeal.

364. Defendant Luiz knew these allegations were false and defamatory and nonetheless allowed Erteschik to testify supporting these false allegations. Defendant Luiz is aware that Plaintiff Bassett is entitled to be in defamatory free workplace and the firing of Bassett was not justified.

93

365. Defendant Luiz has also violated his duties as a board member, to be loyal to the corporation only. Defendant Luiz's loyalty went only to himself as an opportunist, and then to Defendant Erteschik and Collins in his desire in obtaining new employment, taking over my position at HDRC.

366. Defendant Luiz took the position to facilitate the wrongful firing of Plaintiff Bassett, thereby engaging in concert and conspiracy with other named Defendants in retaliation against Plaintiff Bassett for filing a sex harassment/retaliation complaint with the EEOC and for reporting unlawful activities by Defendant Collins and Erteschik, tow whit, financial misappropriations, to law enforcement.

367. Mr. Luiz's action were violation of the Whistleblowers' Protection Act and Title VII of the Civil Rights act of  1965 701(a).

368. Defendant Luiz's violated his legal obligation to me, to protect me and/or give me proper advice from unlawful or wrongful actions by Defendants Collins and Erteschik.  Defendants failure to protect Plaintiff Bassett against Defendant Collins and Erteschik's retaliation and wrongful termination was deliberate and done with malice which facilitated my termination causing financial harm and mental anguish.

369. Defendant Luiz also violated his duty as HDRC board member to be loyal to the corporation.

370. Plaintiff Bassett had communications with 5 board members before and after he was terminated. Those members were, Shawn Luiz, board president Andrew Grant, board secretary Amanda Kelly PhD., Bud Bowles and Board vice-president Maryellen Markley. Plaintiff Bassett was always professional and respectful to all board members to the degree that the situation merited.

371. Plaintiff Bassett had warned board members not retaliate or conspire with Defendant Collins' and Erteschik, but those warnings went unheeded to the great disappointment of Plaintiff Bassett.

### FIRST CAUSE OF ACTION
Sex-Based Discrimination in Violation of
Title VII of the Civil Rights Act of 1964, as amended,
42 U.S.C. § 2000e-2(a)

(This cause applies Defendant HDRC, Defendants Erteschik and Collins
in their official capacity only)

372. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in paragraphs 1 through 372, above.  This claim is based on a violation of Title VII of the Civil Rights Act of 1964, as amended, makes

it unlawful for an employer, "(1) to fail or refuse to hire or to discharge any

individual, or otherwise to discriminate against any individual with respect to

his compensation, terms, conditions, or privileges of employment, because of

such individual's race, color, religion, sex, or national origin; or (2) to limit,

segregate, or classify his employees or applicants for employment in any way

which would deprive or tend to deprive any individual of employment

opportunities or otherwise adversely affect his status as an employee, because

of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §

2000e-2(a).

373.   Plaintiff Bassett was subjected to unwelcome, offensive and

harassing sexually discriminatory conduct during his employment with

Defendant HDRC which was perpetrated upon him by Defendant Ann Collins

and that this conduct was based upon and directed at Plaintiff by reason of his

gender.

374.   Plaintiff notified HDRC's Executive Director, Defendant Erteschik

Erteschik around late July of 2017 that Plaintiff was a victim of sexual

harassment by Defendant Collins, HDRC's Director of Programs and the

agencies bookkeeper. Plaintiff notified Defendant Erteschik of the whole

incident which first started at the Baltimore conference on or about June 16th,

2016.   including the fact that Defendant Collins forced Plaintiff to kiss her,

that Plaintiff and Defendant Collins fell directly in front of the hotels front desk

and landed in a puddle of Defendant's urine as she had lost bladder control,

that we were contacted by 2 hotel security personnel, that Defendant Collins

told me she was in love with me and that I owed her as she helped get me my

job and that she "protects me" and that I was going to have to spend the night

with her naked and further that Defendant Collins exposed her backside to

Plaintiff and that Plaintiff quickly left the room in panic when Defendant

Collins went into the bathroom to "clean up."

375. Plaintiff knew that his 18 year career was most likely over at the

time he refused Defendant Collins forced demands for sexual activity on the

evening of on or about June 16th, 2016 as Defendant Collins controls the

agency and nobody refuses a demand by defendant Collins and expect to keep

their job.

376. Retaliation began almost immediately.

377. Plaintiff informed Defendant Erteschik in July of 2017 that he did

not want to tell anyone of Defendant Collins unwelcomed sexual advances,

demands and requests for perverse sexual activities due to the embarrassment,

shame, fear of retaliation, fear of being called a liar, fear of being fired but felt

97

it was necessary as Defendant Collins has been sending insulting, harassing and threatening emails to Plaintiff ever since July of 2016 just after Baltimore and the harassing. That the threatening and insulting emails were a direct retaliation of the Plaintiff's rejection of Defendant Collins sexual demands. That Plaintiff needed to implore Defendant Erteschik to get Defendant Collins to stop the harassment and insults and treats of termination as he is the only person I could turn to for help..

378. Defendant Erteschik informed Plaintiff that he "was not there" when Defendant Collins first harassed Plaintiff so there was "nothing he could do."

379.  Defendant Erteschik did tell Plaintiff that Defendant Collins must have been pretty drunk to do these things and Plaintiff responded that, "yes, she was completely hammered but she knew what she was doing."

380. I informed Erteschik that I did not want Collins "disciplined," and that Plaintiff had no intention of suing, but the harassment, insults, threats and retaliation had to stop, meaning that I would exercise my options I the threats of termination and other forms of retaliation continue.

381. Defendant Erteschik failed to do an investigation on my complaint of sexual harassment and failed to investigate the retaliation for refusing to engage in forced sexual activities with Defendant Collins.

382. Defendant Erteschik also did nothing to stop the continual harassment, threats, insults, humiliations and retaliation by Defendant Collins.

383. Defendant Erteschik not only failed to take action to investigate or take action to stop the continual retaliation, Defendant Erteschik immediately joined in to collaborated with Defendant Collins in the harassment, threats, insults, humiliations and retaliation against Plaintiff.

384. Defendant Erteschik quickly went from, "since I was not there, I can't do anything," to just flat out calling Plaintiff a liar bout the sexual harassment complaint and complaints about retaliation.

385. Plaintiff thereafter notified Defendant Attorney Shawn Luiz first in September of 2017, who was a HDRC board member and an old co-worker. because he was an attorney and someone I thought Plaintiff could trust to give me a legal opinion on job status, that he could advocate for me on behalf of the board and protect me against the unlawful retaliation of Defendant Collins and Erteschik since he as a lawyer and he could act on my behalf and inform the board of the unlawfulness of retaliation against someone making a sex harassment charge and against a whistleblower.  Whistleblower. I informed Defendant Luiz of the sexual harassment and retaliation by Collins and Erteschik. I also informed Defendant Luiz of the financial mismanagement,

99

lack of financial oversight and the apparent missing funds, gross

mismanagement and/or theft and the retaliation and threats of termination in

detail, giving Defendant Attorney Luiz my whole case against Defendant

HDRC and its management. I requested Luiz represent me to the board to get

the board to investigate Collins' retaliation for Plaintiff refusing to have sex

with Defendant Collins, and to have the board investigate the retaliation for

Plaintiff reporting sexual harassment to the Executive Director, Defendant

Erteschik. I ask Defendant Luiz for confidentiality and board protection. I

improperly advised not to contact the board president, Sharon Smockhoffen as

Defendant Luiz had assured me that he would take care of the matter without

contacting in the previous board president and Luiz was not sure if he could

trust Ms. Smockhoffen. That advice was just flat out bad advice. As it turned

out, I could not trust Defendant Luiz and that Ms. Smockhoffen informed me

that Defendant Luiz did not represent my complaint to the board or provide any

representation, investigation into the either the sex harassment/retaliation or do

anything about Plaintiff's complaint of financial mismanagement/missing

funds. Defendant Luiz falsely told Plaintiff after the last board in either

September or October that my job was safe. Ms. Smockhoffen informed me

later that Defendant Erteschik and Defendant Collins indicated to the board,

includint Defendant Luiz that my job was not safe with HDRC. Defendant Luiz lied to Plaintiff about his representation. Defendant Luiz negligently represented me in that he completely abandoned me and my complaints and falsely gave me a legal opinion or advised me with gross negligence that my job status was safe. Defendant Luiz failed to secure the needed board protection for Plaintiff.

386. Plaintiff requested that he keep the information I gave him confidential from HDRC administration, which Defendant Luiz did not do. In July of 2018 Defendant Luiz was informed of my pending wrongful termination and instead of advising me of the managements malfeasance worked to secure an employment contract to take over my position, which was a gross conflict of interest and a malicious betrayal of my confidence of the attorney client relationship I had with Defendant Luiz and the attorney contract Defendant Luiz was complicit with Defendant HDRC and agreed to take over Plaintiff's casework after Plaintiff would be fired, which facilitated Plaintiff's wrongful discharge which conduct constitutes attorney malpractice.

387. Plaintiff Bassett then contacted Board Secretary Dr. Amanda Kelly regarding the sexual harassment and retaliation by Defendants Collins and Erteschik. Dr. Kelly Pd.D. failed to take any appropriate corrective action.

388. The sexually harassing and discriminatory conduct was sufficiently severe and pervasive so as to unreasonably interfere with Plaintiff's physical health, work performance and so as to create an intimidating, hostile and offensive working environment.

389. During the times referenced herein, Plaintiff was the subject of multiple false rumors as per the statements of vice president Maryellen Markley of having been the perpetrator of the sexual harassment and falsely being romantically involved with Ms. Collins which are all false and defamatory.

390. The multiple comments and harassment ruined the reputation and credibility of Plaintiff Bassett and created an atmosphere of hostility which severely damaged the reputation in the eyes of his co-workers and board members, including the ones that were not conspiring with Defendants Erteschik and Collins as Erteschik informed the board that the financial shortfall in fiscal 2017 was partially the responsibility of Plaintiff as Plaintiff did not bring enough attorney fees to cover the fiscal deficits, (financial mismanagement or theft) since I only brought in about $90,000, which was a gift.

391. Plaintiff was a victim of retaliatory conduct on the part of Defendants. Moreover, this conduct was ongoing and pervasive and constituted a "continuing violation" of Plaintiff's right, during the course of his employment, Plaintiff was forced to work in a sexual discriminatory and hostile work environment, in which the Defendant Executive Director and Defendant Collins and Board members failed to take immediate corrective action, and even failed to take late corrective action, all to Plaintiff's mental, physical and financial detriment.

392. Defendant Erteschik was aware of the hostile work environment and not only acquiesced on in the environment but facilitated the environment by participating in Defendant Collins' hostile work environment.

393. No legitimate official action ever was taken to change the hostile threatening and humiliating atmosphere at HDRC for Plaintiff.

394. As a direct and proximate result of the harassing and hostile sexual environment of Defendant HDRC, and the administrators of HDRC, Defendant Collins and Defendant Erteschik and named Defendant board members, Defendant Luiz, Grant, and Markley, Plaintiff Bassett suffered great embarrassment, humiliation and mental and physical anguish.

395. As a direct, legal and proximate result of the harassment, Plaintiffs have sustained, and will continue to sustain, economic damages to be proven at trial. As a result of Defendants' actions, Plaintiffs have suffered emotional distress, resulting in damages in an amount to be proven at trial. Plaintiff further seeks compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for discrimination at trial.

396. Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiffs' right to be free from discrimination based on sex. The Defendants acted with egregious malice or with reckless indifference to the federally protected rights of Plaintiff and the Employer Defendant HDRC, the employer never implemented its sexual harassment policy and failed to take remedial actions to protect Plaintiff.

## SECOND CLAIM FOR RELIEF
### Retaliation in Violation of
### Title VII of the Civil Rights Act of 1964, as amended,
### 42 U.S.C. § 2000e-3(a)

(This cause applies to all defendants in their official capacity only)

397. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in paragraphs 1 through 397, above.  Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended, prohibits employers

from discriminating against an employee "because [he/she] has opposed any

practice made an unlawful employment practice by this subchapter." 42 U.S.C.

§ 2000e-3(a).

398. Plaintiff Bassett made informal and formal complaints to

Defendants' agents, employees, contractors and board members opposing

Defendants' unlawful, discriminatory employment practices based on sex.

399. Plaintiffs' complaints were made reasonably and in good faith.

400. As a result of Plaintiffs' complaints, Defendants' agents and

employees took adverse actions against Plaintiffs, including, but not limited to,

issuing disciplinary warnings, such as insults, humiliating emails, and threats

of termination; reprimands by supervisors and eventually a firing on July 13th,

2018.

401. As a result of Plaintiffs' complaints, Defendants' agents and

employees, contractors and board members took materially adverse actions

against Plaintiffs, including, but not limited to, issuing disciplinary warnings,

threats of termination; reprimands by supervisors; insults, demeaning emails,

placing Plaintiff on a pretense probation two times; defamed Plaintiff to staff

and board members, ordering Plaintiff Bassett to perform unreasonable

punitive work duties with hopes that incomplete outcomes could lead to actual termination of Plaintiff.

402. Retaliation is hereby established directly through evidence of Collins 'retaliatory animus, and indirectly here by showing that the protected activity was followed closely in time by discriminatory treatment. I filed with the EEOC on July 1st, 2018, and I then contacted Defendant Erteschik on July 2nd, 2018 and reported that Plaintiff was done trying to give the agency a gift, so Plaintiff filed with the EEOC, and Lou responded, "***so, do you want us to fire you or do you want to quit.*** I was fired 11 days later.

403. Also, no other attorney was ever fired for asking the Executive Director to demand a defamation free working environment or not billing $330.00fast enough.  These fact support an inference of discrimination sufficient to establish a prima facie case.

404. Defendant Erteschik testified on November 16th, 2018 under oath, during HDRC's appeal of Plaintiff's award of unemployment insurance benefits. Defendant Erteschik testified while using further retaliation against Plaintiff after Plaintiff was fired, by slandering Plaintiff and fabricating false scenarios about Plaintiff's dress and mental health.

405. Defendant Erteschik surprisingly testified on November 16th, 2018, under oath, that the decision to fire Plaintiff Bassett came not only from his request to be in a defamation free work environment but was also part based on Plaintiff Bassett's *report of sexual harassment* and *Plaintiff's filing with the EEOC and his report of financial mismanagement*. That testimony contradicted Plaintiff's letter of separation. It also establishes that the firing was pretextual and illegal.

406. It is impermissible to retaliate, threaten to fire or fire a person who files a charge of sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964. It is also illegal and impermissible to fire someone who has made a report to an employer or law enforcement of illegal/criminal activities unless the report was made in bad faith.   Defendant Erteschik admitted under oath that he in fact fired Plaintiff for making a charge of discrimination based on sex and for being a whistleblower.

407. As herein alleged, the Defendants, by and through its officers, managing agents and/or its supervisors, illegally retaliated against Plaintiff by unjustly subjecting him to unjust scrutiny, false allegations of misconduct and unwelcome and derisive comments solely because he had reported the aforementioned sex discrimination. Defendants had no legitimate reasons for

107

any such act. Each said act of retaliation is in violation of Title VII of the Civil Rights Act of 1964.

408. Plaintiff is informed and believes, and based thereon alleges, that in addition to the practices enumerated above, the Defendant may have engaged in other discriminatory practices against her which are not yet fully known. At such time as such discriminatory practices become known, Plaintiff will seek leave of Court to amend this Complaint in that regard.

409. As a direct and proximate result of the Defendant's willful, knowing, and intentional discrimination and retaliation against Plaintiff, Plaintiff has suffered and will continue to suffer pain, humiliation and emotional distress. Plaintiff has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

410. As a further direct and proximate result of Defendant's violation of Title VII of the Civil Rights Act of 1964, as described, Plaintiff will be compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with the Defendant and has thereby

incurred and will continue to incur legal fees and costs, the full nature and extent of which are presently unknown to Plaintiff.

411. Plaintiff is informed and believes, and based thereon alleges, that the Defendant's conduct as described above was willful, wanton, malicious, and done in reckless disregard for the safety and well-being of Plaintiff. By reason thereof, Plaintiff is entitled to punitive or exemplary damages from the Defendants in a sum according to proof at trial.

412. As a result of Plaintiffs' complaints, Defendants' agents and employees, contractors and board members took materially adverse actions against Plaintiffs, including, but not limited to, issuing disciplinary warnings, threats of termination; reprimands by supervisors; insults, demeaning emails, placing Plaintiff on a pretense probation two times; defamed Plaintiff to staff and board members, ordering Plaintiff Bassett to perform unreasonable punitive work duties with hopes that incomplete outcomes could lead to actual termination of Plaintiff.

413. Defendant Grant, and other agents Defendant Erteschik and Defendant Collins had instituting a pretext 30 day mandatory, "get us all of your billing or we will fire you" policy specifically targeted at Plaintiff Bassett.

414. Plaintiff finished all remnants of his current legal work, including any billing weather or not it needed to be done or not was on July 12th, 2018

415. The day after Plaintiff had completed the bizarre demand to complete all unfinished litigation work involving billing within "30 days or no investigation will take place," Plaintiff was fired.

416. Defendant Grant's bizarre "30 day" demand was a pretext retaliation for complaining to the board and a collaboration with Defendant Collins and Erteschik 's have Plaintiff fired and that Plaintiff could be fired without leaving any unfinished legal work, as all the attorneys at the agency were gone.

417. Defendant Erteschik set up a system of office emails wherein Defendant Erteschik gave Defendant Collins his email address and further gave Defendant Collins a separate email address under his name wherein Defendant Collins could impersonate Defendant Erteschik for the purpose of retaliation and harassment against Plaintiff Bassett while impersonating Defendant Director Erteschik; further isolating Plaintiff Bassett by prohibiting any staff and board members from calling, emailing, or contacting Plaintiff Bassett with the threat of discipline or termination, a policy aimed specifically at Plaintiff Bassett.

418. Defendants' adverse actions constituted retaliatory workplace harassment.

419. Defendants' retaliatory actions were sufficient to deter a reasonable person from engaging in protected activity under Title VII.

### THIRD CAUSE OF ACTION
### (SEXUAL HARASSMENT AND HOSTILE WORK ENVIRONMENT)
### (This cause applies to all defendants in their official capacity only)

420. Plaintiff incorporates as if fully restated all of the allegations previously written in paragraph 1 through 420.

421. Plaintiff was subjected to unwelcome, offensive and harassing sexually discriminatory conduct during his employment with Defendant HDRC which was perpetrated upon him by all named Defendants, and that this conduct was based upon and directed at Plaintiff by reason of his gender.

422. Plaintiff noticed otherwise aware, of the sexually harassing and discriminatory conduct, but HDRC failed to take any appropriate corrective action.

423. This sexually harassing and discriminatory conduct was sufficiently severe and pervasive so as to unreasonably interfere with Plaintiff's physical health, work performance and so as to create an intimidating, hostile and

offensive working environment. Plaintiff is undergoing treatment for Post-

traumatic stress disorder due to the shock of the outrageous conduct of the

Defendants.

424. During the times referenced herein, Plaintiff was the subject of

multiple false rumors of having sexual relationships with co-workers, being

delusional, combative, dressing like a derelict homeless person and behaving,

"just not right," Plaintiff going off on rants and being subjected to isolation

when Defendant Collins and Erteschik ordered staff to never talk or help

Plaintiff, being called a liar, and being falsely referred to as a violent spousal

abuser and falsely called a danger to the office personnel and being responsible

for not bringing in enough money to balance the budget, by Defendant

Erteschik and Collins, made those comments to the board to shift blame for

missing revenues.

425. Said multiple comments and harassment ruined the reputation and

credibility of Plaintiff, and created an atmosphere of hostility which severely

damaged the reputation in the eyes of his coworkers.

426. Plaintiff was a victim of retaliatory conduct on the part of

Defendants. Moreover, this conduct was ongoing and pervasive and constituted

a "continuing violation" of Plaintiff's right. During the course of his

employment, Plaintiff was forced to work in a sexual discriminatory and hostile environment. Defendant Erteschik was given notice of the hostile work environment and failed to take any corrective action ever, all to Plaintiff's detriment. The conduct was so severe or pervasive that reasonable persons in Plaintiffs' positions would find their work environment to be hostile or abusive.

427. HDRC Executive Director and the corporation board was aware of the hostile work environment and did more than acquiesce in the environment, they became complicit.

428. Plaintiff's complaints were properly delivered and were credible and supported by clear evidence yet no corrective action was taken.

429. No independent internal or external investigation was conducted.

430. Defendant HDRC does not have a sexual harassment policy in Plaintiff's workplace or one that is remotely implemented.

431. As a direct and proximate result of the harassing and hostile sexual environment caused by the Defendants and each of them, Plaintiff suffered great embarrassment, humiliation and mental and physical anguish.

432. Plaintiffs believed their work environment to be hostile or abusive as a result of Defendants' agents' and employees' conduct.

433. Management level employees knew, or should have known, of the abusive conduct. Plaintiffs provided management level personnel, including Defendant Erteschik and Defendant Collins, with information sufficient to raise a probability of discrimination based on sex in the mind of a reasonable employer. Moreover, the harassment was so pervasive and open that a reasonable employer would have had to have been aware of it. Indeed, management level employees were themselves complicit in the abusive conduct.

434. As a direct, legal and proximate result of the discrimination, Plaintiff has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

435. Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiffs' right to be free from discrimination based on Plaintiff's sex and retaliation reporting sexual discrimination Plaintiffs are entitled to their reasonable attorneys' fees and costs of suit.

**FOURTH CLAIM FOR RELIEF**
**FAILURE TO PREVENT DISCRIMINATION AND**
**HARASSMENT**
**(Applies to Defendant HDRC, Defendant Erteschik and Collins in**
**their official capacity** only)

436. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in paragraphs 1 through 436, above.

437.  Plaintiffs made informal and formal complaints to Defendants' agents and employees opposing Defendants' unlawful, discriminatory employment practices based on sex.

438. As a result of Plaintiffs' complaints, Defendants' agents and employees took materially adverse actions against Plaintiffs, including, but not limited to, issuing disciplinary warnings, such as, insults, fabricating discipline records, threats of termination; reprimands by supervisors; and the corporation board was instituting a phony 30 day mandatory, "get all your billing done or we will fire you" specifically targeted at Plaintiff Bassett.

439. The board's president Defendant Grant and vice president Defendant Markley both investigated Plaintiff and not the Plaintiff's complaints. Defendant Grant demand to finish all billing before we start any investigation was a ruse as Plaintiff was going to be fired whether the billing was done or not and there never was a plan to investigate Plaintiff's complaints of discrimination and retaliation.

440. Defendants' adverse actions constituted retaliatory workplace harassment.

441. Defendants' retaliatory actions were enough to deter a reasonable person from engaging in violating protected activity under Title VII of the Civil Rights Act of 1964, Sec. 701 (a).

442. Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiffs' right to be free from discrimination based on sex

443. As a direct, legal and proximate result of Defendants' retaliation, Plaintiff have sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

444. Plaintiffs are entitled to their reasonable attorneys' fees and costs of suit.

**FIFTH CAUSE OF ACTION**
**(WHISTLEBLOWER RETALIATION IN VIOLATION OF HRS §378-62, §378-63 et-al)**
**PLAINTIFF IS A WHISTLEBLOWER**
**Under Hawaii's WHISTLEBLOWERS' PROTECTION ACT at HRS §378-61-62 t:**
**(Applies to Defendant Erteschik, Collins, Grant, Markley and Luiz in their official and individual capacity)**

445. Plaintiffs hereby incorporate by reference as if fully set forth herein the allegations contained in paragraphs 1 through 446, above.

446.  Plaintiff Bassett is an "Employee" under the act as he is "a person who performs a service for wages"

447. HDRC is an "Employer" under the act as HDRC is an employer as it "means a person who has one or more employees. Employer includes an agent of an employer a person who has one or more employees."

448. HDRC in an Employer and Defendant Erteschik, Collins, Grant, Markley and Luiz are all agents of the employer. HDRC come within the act because HDRC is a "Person" (which) means an individual, sole proprietorship, partnership, corporation, association, or any other legal entity. HDRC is a corporation.  A law enforcement agency or any member or employee of a law enforcement agency;

449. §378-62 An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because: Plaintiff Bassett was discharged  partly due to reporting financial mismanagement (theft), a violation or suspected violation of law to the employer and to law enforcement.

450. Defendant Erteschik testified under oath on November26, 2018 at HDRC appeal of Plaintiff's Unemployment Insurance award that one of the

reason that Defendant Erteschik considered in firing Plaintiff was his report of financial mismanagement and suspected theft of agency funds.

451.  Plaintiff is entitled under the code to have his job restored fully including rank and benefits plus interest, plus other costs and attorney fees and any other provision that is allowed under the code.

452. The code provide penalty for each violation of the Protection Act by an the individual responsible for the violation up $10,000 per violation.

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING – (PRIVATE ATTORNEY GENERAL DOCTRINE)

**(Breach of Implied Covenant of Good Faith and Fair Dealing) (applies the Defendant HDRC, Defendant Erteschik and Collins in their official capacity)**

453. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

454. Plaintiff and Defendant had an agreement that Plaintiff would be able to perform the duties of an informal internal auditor in accordance with commonly understood business practices, without fear of losing his job, being

threatened physically and otherwise, and without having his performance evaluation downgraded and bonus reduced because he spoke up about unlawful and improper practices at the agency. That  the Defendant would make available the financial of fiscal 2017 including ledgers, books, receipts, check requests, all banking statements from savings, checking and credit and statements for the purpose of reconciling Defendant's assertion that no bonuses are available to the staff including my $4000 bonus that was promised,  as the company is $80,000 in in the red.  The agreement between Plaintiff and Defendant contained an implied covenant of good faith and fair dealing, which obligated Defendant to perform the terms and conditions of the agreement fairly and in good faith and to refrain from doing any act that would deprive Plaintiff of the benefits of the agreement.

455. Plaintiff has performed all conditions, covenants and promises required on his part to be performed in accordance with the terms and conditions of the agreement.

456. Plaintiff is informed and believes, and thereon alleges, that Defendant knew Plaintiff had fulfilled, and was ready, willing and able to continue to fulfill all of his duties and conditions under the agreement.

457. Defendant breached the implied covenant of good faith and fair

dealing under the agreement by terminating Plaintiff without good cause.

458. As a direct, foreseeable and proximate result of Defendant's breach

of the implied covenant, Plaintiff has suffered and sustained damages in an

amount according to proof.

### SIXTH CAUSE OF ACTION
### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)
### (For Defendants Erteschik and Defendant Collins)

459. As a separate and distinct cause of action, Plaintiff complains and

460. realleges all the allegations contained in this complaint, and

incorporates them

461. by reference into this cause of action as though fully set forth

herein, excepting

462. those allegations which are inconsistent with this cause of action.

Defendant

463.  engaged in outrageous conduct towards Plaintiff with the intention

to cause, or with reckless disregard for the probability of causing, Plaintiff to

suffer severe emotional distress, and with wanton and reckless disregard for the

injurious result to Plaintiff, as set forth hereinabove. The conduct set forth

hereinabove was extreme and outrageous and an abuse of the authority and

position of Defendant. The above -described conduct was intended to cause severe emotional distress or was done in conscious disregard of the probability of causing such distress. This conduct exceeded the inherent risks of employment and was not the sort of conduct normally expected from an

464. employer.  As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has sustained and continues to sustain pain and suffering, extreme and severe mental anguish and emotional distress; Plaintiff has incurred and will continue to incur medical expenses for treatment, and for incidental medical expenses; and Plaintiff has suffered and continues to suffer a loss of earnings and

465. other employment benefits. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.  Plaintiff is informed and believes and thereon alleges that Defendant and its managing agents, managers, officers, and/or directors committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's  rights.

**SEVENTH CAUSE OF ACTION**
**(DEFAMATION/LIBEL PER SE)**
**(For Defendant Collins and Defendant Miyahara)**

466. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

467. On or about May 1st, 2018 Defendants Miyahara and Collins, and each of them, caused to be written, printed, published and disseminated a malicious, false, defamatory statement wherein Plaintiff is disparaged in his professional/business capacity, which is practicing law, which is libel per se and injury will be assumed. Defendants' publication of the written statements were made with actual malice in that the defendants knew that the aforesaid defamatory statements, implications and meanings of and concerning the Plaintiff were false and published them or caused them to be published in reckless disregard of their truth or falsity. The aforesaid defamatory statements and meanings were published or caused to be published by Defendants in a purposeful manner. The publication of the complaint by Defendant Miyahara as found on allegations lines 263 to 265 as fully described herein from allegation lines 263 to 291 was accomplished by means which radically departed from the responsible administration of the HDRC employee manuals

regarding complaints about co-workers and the standards and practices which

prohibit a work environment that allows false and defamatory statements to be

uttered or published against all other staff members or administration members.

That the above false and defamatory statements were intended to be and are of

and concerning the Plaintiff and were made with common law malice and

actual malice. Defendant Collins and Miyahara's obvious enthusiastic support

and effort in assisting in the dissemination of the statement via email.

Defendant Miyahara, Collins has attacked and negatively presented the

Plaintiff.

468. Defendants, and all of them knew of the extreme hostility Defendant

Collins' had towards Plaintiff Bassett.  By reason of the aforesaid acts of

Defendants, Plaintiff has been held up to public disgrace,  scorned and

ridiculed,  has been seriously injured in its business and will be further  injured

in his business in the future, Plaintiff has suffered grave and permanent

impairment of his reputation  and standing in the legal community and with his

clients, associates at the Honolulu  office in his area of law in the special

education community and with the general public, and has otherwise  been

injured in its good name,  fame and reputation. He has lost friends at his office

and has had his reputation with the HDRC board tarnished as a direct result of

the aforesaid acts of defendants, plaintiff has been economically damaged in that the complaint containing false and defamatory statements had a direct causal relationship to Plaintiff's pretextual firing, after read or become aware of the statements will conclude based on the false and defamatory statements of and concerning the Plaintiff that Plaintiff is a dangerous delusional and combative person and not competent in his field of business of being a lawyer in good standing.

469. As the acts of defendants were committed with malice, fraud and oppression and with intent to harm and destroy plaintiff, defendants are also liable for the payment of punitive damages in such amount as a jury may find necessary to deter and punish the defendants for the malicious conduct set forth in this Complaint.

## 8th CAUSE OF ACTION
## (WRONGFUL TERMINATION- SEXUAL DISCRIMINATION RETALIATION FOR REPORTING SEXUAL DISCRIMINATION)
## (against all Defendants)

470. As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

471.    For fiscal year 2018 Plaintiff billed for over $330,000 as of July

12th, 2018 when all Plaintiff's billing was finished, against the rational advice of

Plaintiff.  Plaintiff is informed and believe that over half of that has been paid.

Plaintiff was fired less than 24 hours after he finished all administrative request

to completely finish billing and clear his billing portfolio. Plaintiff was fired on a

clear pretext, after he sent an email to Defendant Erteschik requesting that he tell

Defendant Miyahara that Plaintiff was demanding that Miyahara retract her

defamatory statements she made against Plaintiff on May 1st, 2018.  It is a

violation of agency policy to defame another staff member, therefore my request

to Defendant Erteschik was proper.

472.    The Plaintiff participated in a protected activity in that he filed a

charge with the EEOC on July 1st, 2018 complaining about discrimination and

retaliation for reporting discrimination by Defendants HDRC, Erteschik and

Collins due to his sex.

473.    The employer was aware of that Plaintiff Bassett was engaged in a

protected activity in that he reported discrimination to Defendant Erteschik on

August 21st 2017 and again during a telephone conversation on July 2nd, 2018

told Defendant Erteschik that Plaintiff filed an initial charge with the EEOC and

also informed Erteschik's agent and vice president of the board on July 3rd, 2018

that Plaintiff had filed with the EEOC complaining of discrimination by reason of his sex and retaliation against Plaintiff, which is protected activity. Defendant Erteschik is a lawyer, so there should have been no confusion.

474.    Plaintiff had informed Defendant Erteschik that Plaintiff was no longer interested in Defendant Collins' harassing ruse of a phony employment contract devised between Defendant Collins' and HDRC's attorney John Knorek and that Plaintiff was now going to sue. The employee Plaintiff Bassett was immediately asked by Defendant Erteschik whether he wants to be fired or do you want to quit."

475.    Plaintiff responded the inquiry, "neither."

476.    Plaintiff was fired 11 days later on a pretext reason of asking Defendant Erteschik if he could tell Defendant Miyahara on behalf of Plaintiff to (demand to withdraw) withdraw her defamatory statements against Plaintiff.

477.    Being fired meets the requisite element of being subjected to a material adverse employment action.

478.    Employer's explanation is merely a pretext for actual retaliation.

479.    Defendant Erteschik testified under oath on November 26th, 2028 that he considered Plaintiff's accusation of sexual harassment, which would

include the filing of the Title VII charge against Defendant Collins as part of

Defendant Erteschik's decision to fire Plaintiff.

## NINTH CAUSE OF ACTION
## WRONGFUL TERMINATION- WHISTLEBLOWERS
## PROTECTION ACT, HRS 21 §378-62, §378-63  et-al
### (against all defendants)

480.    As a separate and distinct cause of action, Plaintiff complains and

realleges all of the allegations contained in this complaint, and incorporates them

by reference into this cause of action as though fully set forth herein, excepting

those allegations which are inconsistent with this cause of action.

481.    For fiscal year 2017 Plaintiff billed for over $90,000 as of July 12th,

2018 when all Plaintiff's billing was finished, which was against the rational

advice of Plaintiff.  Plaintiff was fired less than 24 hours after he finished all

administrative request to completely finish billing and clear his billing portfolio.

Plaintiff was fired on a clear pretext, after he sent an email to Defendant

Erteschik requesting that he tell Defendant Miyahara that Plaintiff was

demanding that Miyahara retract her defamatory statements she made against

Plaintiff on May 1st, 2018.  It is a violation of agency policy to defame another

staff member, therefore my request to Defendant Erteschik was proper.

482.    The Plaintiff participated in a protected activity in that he reported to Defendant Erteschik and reported to law enforcement that there was a possible criminal activity involving financial mismanagement, misuse of agency funds and/or just plain theft of agency funds from HDRCs' federal grants, so that he was therefore Plaintiff was protected under the state's Whistleblower Protection Act.

483.    The employer was aware of that Plaintiff Bassett was engaged in a protected activity in that he reported the alleged crime directly to Defendant Erteschik on late August or early September 2017 and again during multiple telephone conversations in June of 2018 and again on July 2nd, 2018 Plaintiff was told by Defendant Erteschik that Defendant Collins wanted him *fired* making the charge that there was financial mismanagement or theft of agency funds. Plaintiff also informed the HDRC's board on September of 2017 and again in June of 2018 about my report of missing funds and the possible criminal activity of Defendant Collins and/or Defendant Erteschik.

484.    Plaintiff was engaged in protected activity. Defendant Erteschik is a lawyer, so there should have been no confusion about Plaintiff's status.

485.    Plaintiff had informed Defendant Erteschik that Plaintiff was no longer interested in Defendant Collins' harassing ruse of a phony employment

contract devised between Defendant Collins' and HDRC's attorney John Knorek and that Plaintiff was now going to sue. The employee Plaintiff Bassett was immediately asked by Defendant Erteschik whether he wants to be fired or do you want to quit."

486. Plaintiff responded the inquiry, "neither."

487. Plaintiff was fired 11 days later on a pretext reason of asking Defendant Erteschik if he could tell Defendant Miyahara on behalf of Plaintiff to (demand to withdraw) withdraw her defamatory statements against Plaintiff.

488. Being fired meets the requisite element of being subjected to a material adverse employment action.

489. Employer's explanation is merely a pretext for actual retaliation.

490. Defendant Erteschik testified under oath on November 26th, 2028 that he, in fact considered Plaintiff's accusation of his report of financial mismanagement as part of his decision to fire Plaintiff on Juine13th, 2018. That would also include the Plaintiff's filing of his Title VII charge against Defendant Collins as part of Defendant Erteschik's decision to fire Plaintiff as noted above.

491. Those confessions under oath directly contradict the separation letter of July 13th 2018 wherein Defendant deny the consideration of protected activity to part of the decision to terminate Plaintiff.

## TENTH CAUSE OF ACTION
## THEFT OR BRIBERY CONCERNING PROGRAMS RECEIVING FEDERAL FUNDS -18 U.S. CODE § 666- PRIVATE ATTORNEY GENERAL DOCTRINE ;
### (Against Defendant Collins and Defendant Erteschik)

492.    As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

493.    Hawaii Disability Rights Center receives about $1.5 million dollars in federal grants.

494.    Most of the grants come from US Department of Health and Human Services (US DHHS)

495.    Plaintiff has contacted the Inspector General and it is apparent that they want the financials of agency before they will investigate.

496.    Same with HPD White Collar Crimes Division. They want to see the financials including bank statements from checking and savings including credit card transactions on all agency cards.

497.    Defendant Erteschik informed Plaintiff that his $4000.00 bonus is gone because Defendant Collins and Defendant Erteschik spent it.

498.    In both the 2016 form 990 it there appears irregular spending including $100,000 in executive expenses and  $57,000 in travel and $30,000 in bonuses to Defendant Collins and Erteschik together. Yet there still was $200,000 in carry over.

499.    For 2017 Defendant Erteschik told all staff that there would be no bonuses since the agency is broke. Erteschik told me personally in around October 2017 that HDRC was $80,000 in the red. He got the information from Defendant Collins. Defenat Erteschik has maintained that he never looks at the financials or ledgers beyond the unverified annual "audit."

500.    That audit gives a false valuation and assertion level as there are no internal or external levels of oversight beyond what Defendant Collins tells the auditor. None…zero.

501.    The 2107 annual report came out 11 months late on November 28, 2018.

502.    The annual now shows that there was approximately $200,000 carry over at the end of 2017 fiscal.  That is just plain fabricated.

503.    The form 990 was due in April of 2018 but it apparently has not been filed.

504.     Plaintiff is informed and believes that the Defendants are shifting 2018 funds back on the books to cover for the 2017 $280,000 unbudgeted deficiency. That would explain the panic in getting my $300,000 fee portfolio turned to cash.

505.     The board promised an outside investigation when I reported the problems with the finances to the board. Defendant Collins and Defendant Erteschik refuse to do a forensic audit. That would be for obvious reasons.

506.     I am requesting that the Court order HDRC hire qualified folks to perform a forensic audit for the 2017 fiscal and or tax year. The 2016 tax year should also be done too.

507.     I am informed and believe that Defendant Collins and her associates have been involved in forming corporate shell companies and using them for developing real estate holdings. That she has been doing it since 1990.

## ELEVENTH CAUSE OF ACTION
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING – (PRIVATE ATTORNEY GENERAL DOCTRINE)

**(Breach of Implied Covenant of Good Faith and Fair Dealing) (applies the Defendant HDRC, Defendant Erteschik and Collins in their official capacity)**

508.    As a separate and distinct cause of action, Plaintiff complains and reralleges all of the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.

509. Plaintiff and Defendant had an agreement that Plaintiff would be able to perform the duties of an informal internal auditor in accordance with commonly understood business practices, without fear of losing his job, being threatened physically and otherwise, and without having his performance evaluation downgraded and bonus reduced because he spoke up about unlawful and improper practices at the agency. That  the Defendant would make available the financial of fiscal 2017 including ledgers, books, receipts, check requests, all banking statements from savings, checking and credit card statements for the purpose of reconciling Defendant's assertion that no bonuses are available to the staff including my $4000 bonus that was promised,  as the company is $80,000 in in the red.  The agreement between Plaintiff and Defendant contained an implied covenant of good faith and fair dealing, which obligated Defendant to perform the terms and conditions of the agreement fairly and in good faith and to refrain from doing any act that would deprive Plaintiff of the benefits of the agreement.

510. Plaintiff has performed all conditions, covenants and promises required on his part to be performed in accordance with the terms and conditions of the agreement.

511. Plaintiff is informed and believes, and thereon alleges, that Defendant knew Plaintiff had fulfilled, and was ready, willing and able to continue to fulfill all of his duties and conditions under the agreement.

512. Defendant breached the implied covenant of good faith and fair dealing under the agreement by terminating Plaintiff without good cause.

513. As a direct, foreseeable and proximate result of Defendant's breach of the implied covenant, Plaintiff has suffered and sustained damages in an amount according to proof.

## TWELFTH CAUSE OF ACTION
## LEGAL MALPRACTICE-BREACH OF FIDUCIARY DUTY
### (Defendant Luiz only)

**514.** As a separate and distinct cause of action, Plaintiff complains and realleges all of the allegations contained in this complaint, and incorporates them by reference into this cause of action as though fully set forth herein, excepting  those allegations which are inconsistent with this cause of action.

**515.** I contacted attorney Luiz, to HDRCs represent me to the board  to represent my complaints to the board on both the Title VII complaint and th retaliation and the fiscal mismanagement.

**516.** During our discussions I emailed Mr. Luiz my whole case against the agency including my case against Defendant Collins and Defendant Erteschik. I wanted assurance that my communications would not get into the hands of Collins and Erteschik and I wanted assurance the I would get board protection.

**517.** Luiz did not object to my terms.

**518.** Defendant Luiz gave me bad advice when he informed me not to contact The board president, Sharon Smockhoffen as she would have done something to protect me.

**519.** Defendant Luiz failed to investigate my complaints

**520. Defendant Luiz lied to me when he told me that my job was safe.**

**521. Defendat Luiz simply told me without investigation that my claims had no merit**

522.    Defendant Luiz betrayed his duty to Plaintiff and his duty to the corporation in favor of securing employment. Defendant Erteschik told Luiz that on information and belief that I was going to be leaving the agency and they

wanted to contract him to take over my position. He took the position knowing I was going to be fired without cause.

523.   Luiz is now using my confidential communication against me to secure a contract to take over my job and using it again me in HDRC appeal of my Unemployment Insurance award. He is actually representing HDRC against me on the same issues he was representing me on.

524.   He is represented the employer HDRC, against me. He abandoned me then knowingly using perjured testimony against Plaintiff in the unemployment appeal. Unemployment Insurance investigator found my dismissal to be a pretense. The investigator agreed with Plaintiff that Plaintiff's dismissal was not justified.

525.   For the costs and disbursements in this action including reasonable allowances for counsel fees and other lawful expenses;  and

526.   For such other and further relief as the Court may find just and proper under the circumstances.


Plaintiffs seek a judicial declaration of the rights and duties of the respective parties.

## **INJUNCTIVE RELIEF ALLEGATIONS**

No plain, adequate, or complete remedy at law is available to Plaintiffs to redress the wrongs addressed herein.

If this Court does not grant the injunctive relief sought herein, Plaintiffs will be irreparably harmed.

WHEREFORE, Plaintiff prays that the Court:

1. For an amount no less than $600,000.00  in general damages together with interest thereon;

2. For an amount of no less than $200,000 in special damages

3. For punitive damages in an amount to be proven at trial;

4. Order HDRC to acquire and pay for provide to the court or to law HPD law enforcement a forensic audit for the 2017 fiscal year;

5. Order defendant HDRC to provide Plaaintiff all available financial of fiscal financial documents for the 2017 fiscal year including ledgers, books, receipts, check requests, all banking statements from savings, checking and credit card statement;

6. For all civil penalties awardable;

7. For all cost that are incurred;

8. Restore Plaintiff's position at HDRC including paying Plaintiff all back pay including benefits, medical, pension, dental, including bonus.

9.    For all interest accrued;

Award Plaintiff reasonable attorney's fees and costs and such other relief as is just.

## **DEMAND FOR JURY TRIAL**

Plaintiff Matthew C. Bassett hereby demands a jury trial on issues so triable.

DATED:  Honolulu, Hawaiʻi, December 4,, 2018.

/ Matthew C. Bassett

Matthew C. Bassett

Attorney at Law

Plaintiff