IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MATTHEW C. BASSETT,<br><br>        Plaintiff,<br><br>   vs.<br><br>HAWAII DISABILITY RIGHTS<br>CENTER,<br><br>        Defendants. | CIV. NO. 18-00475 JMS-KJM<br><br>ORDER (1) GRANTING DEFENDANT HAWAII DISABILITY RIGHTS CENTER'S MOTION FOR SUMMARY JUDGMENT, ECF NO. 74; AND (2) DENYING PLAINTIFF MATTHEW C. BASSETT'S MOTION FOR SUMMARY JUDGMENT, ECF NO. 73 |

## ORDER (1) GRANTING DEFENDANT HAWAII DISABILITY RIGHTS CENTER'S MOTION FOR SUMMARY JUDGMENT, ECF NO. 74; AND (2) DENYING PLAINTIFF MATTHEW C. BASSETT'S MOTION FOR SUMMARY JUDGMENT, ECF NO. 73

## I. INTRODUCTION

This case concerns allegations of sexual harassment and retaliation made by Plaintiff Matthew C. Bassett ("Bassett" or "Plaintiff") against his former employer, the Hawaii Disability Rights Center ("HDRC" or "Defendant"). Bassett, the former Director of Litigation at HDRC, has brought suit as a pro se attorney alleging that HDRC's Director of Operations, Ann Collins, sexually harassed him while at a conference in June 2016 in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq. Bassett further alleges that

after he internally reported Collins' alleged harassment as well as his suspicions that Collins was engaged in various financial crimes, HDRC unlawfully retaliated by (1) creating a hostile work environment; and (2) taking discrete adverse employment actions in violation of both Title VII and the Hawaii Whistleblower Protect Act ("HWPA"), Hawaii Revised Statutes ("HRS") § 378-62 et seq. HDRC maintains that all adverse employment actions taken against Bassett were legitimate responses to Bassett's unprofessionalism, failure to complete required work, and abusive conduct toward HDRC clients, board members, management, and staff.

Both parties filed Motions for Summary Judgment as to all claims. ECF Nos. 73, 74. For the reasons explained below, the court GRANTS Defendant's Motion for Summary Judgment in full. Accordingly, Plaintiff's Motion for Summary Judgment is DENIED.

## II. <u>BACKGROUND</u>

### A.    Factual Background

The court's review was hampered by Plaintiff's failure to provide evidence as required by Federal Rule of Civil Procedure 56(c), either in support of his own Motion for Summary Judgment or in opposition to HDRC's Motion for Summary Judgment. Bassett's declarations—in support of and in opposition— authenticate certain exhibits but utterly fail to address *facts* as required by Rule

2

56(c)(4).  *See* ECF Nos. 75-2, 104-7.  And his exhibits offer little to no admissible

evidence in support of his allegations.  Instead, Bassett appears to assume that the

court will accept as true facts alleged in his Second Amended Complaint ("SAC"),

ECF No. 66, or his memoranda in support or opposition to summary judgment,

ECF Nos. 73, 104.  Ultimately, as set forth below, Bassett's failure to adequately

assert facts is fatal to his claims.  In order to avoid confusion, but also to offer

appropriate context, this Order sets out Bassett's factual allegations and specifies

which of these allegations are and which are not supported by evidence as required

by Rule 56(c).

Defendant HDRC is a Hawaii non-profit agency based in Honolulu.

Dec. of Louis Erteschik, ECF No. 91-1 at PageID # 1640; ECF No. 66 at PageID

# 1009.  Established under a federal program to support individuals with

disabilities, HDRC's mandate is to "provide legal and advocacy services to people

with disabilities at no charge to the individuals with disabilities."  ECF No. 91-1 at

PageID # 1640.  HDRC's litigation and advocacy work is primarily funded by the

federal government, with a smaller amount of funding coming from the state

government.  *Id.* at PageID # 1641.  When HDRC litigates under statutes that allow

recovery of costs and attorney's fees, all recovered amounts must be returned to

HDRC's funders.  *Id.*

HDRC is overseen by a Board of Directors and has 18 to 21 employees at any given time. *Id.* at PageID ## 1639, 1641. At all relevant times, Louis Erteschik, HDRC's executive director, and Collins were HDRC managers. ECF No. 91-7 at PageID # 1699. The conduct of HDRC employees is governed by the HDRC Policies and Procedures Manual, ECF No. 91-4, which expressly prohibits "[d]iscourtesy or rudeness to clients, co-workers, supervisors, [and] management," "[c]onduct which violates common decency," "false or malicious statements about . . . other employees," and "insubordination," including "refusal to perform work as directed." *Id.* at PageID ## 1690-92. Violation of these standards "will result in discipline up to and including termination of employment." *Id.* at PageID # 1693.

The Manual also sets forth procedure for responding to allegations of sexual harassment, providing that "[a]ny employee who feels subjected to sexual harassment should report it immediately to the Executive Director or another member of management. The Center will conduct an investigation and take appropriate disciplinary action against any employee who is found to have engaged in prohibited sexual harassment." *Id.* at PageID ## 1691-92.

Bassett joined HDRC as a staff attorney in 1997. ECF No. 91-1 at PageID # 1642. In 2012, he assumed the then-newly created role of Director of Litigation, which he continued to fill until he was terminated in July 2018. *Id.* At

4

all relevant times, Bassett resided in and worked from Maui and his "sole
supervisor" was Erteschik.  *Id.* at PageID # 1641; SAC, ECF No. 66 at PageID #
1009, 1012.  For much of Bassett's time with HDRC he was a successful litigator
and exemplary employee.  *See, e.g.*, ECF No. 91-1 at PageID # 1654; SAC, ECF
No. 66 at PageID # 1009.  But in 2014, it became clear that Bassett was
approximately five years behind on billing attorney fees.  ECF No. 91-1 at PageID
## 1666-67, 1671.  This was problematic because, in some cases, the statute of
limitations for recovery had almost run, meaning HDRC could not fulfill its
obligation to return recovered attorney fees to its funders.  *Id.* at PageID # 1644;
Dec. of Maryellen Markley, ECF No. 91-46 at PageID # 1936.  As a result, from
2014 to 2018, HDRC Director of Operations, Ann Collins, began regularly
checking in with Bassett regarding his billing.  *See generally* ECF No. 91-37.

From June 12 to June 17, 2016, Bassett, Collins, and Erteschik
attended a business conference at the Marriot Waterfront Hotel in Baltimore,
Maryland.  *See* ECF Nos. 91-38, 91-39, 91-40.  Plaintiff alleges in his SAC and
briefing that Collins sexually harassed him at the hotel on the night of June 16,
2016 by forcing him to kiss her, demanding that he "engag[e] in some kind of
sexual activity," and "ma[king] it clear" that Plaintiff's job "depended on
satisfying her current sexual demands."  Pl.'s Opp'n at 4-5, ECF No. 104 at

PageID ## 1988-89; *see* SAC, ECF No. 66 at PageID ## 1010-11.[1]  In response,

Defendant claims that Collins was not even in Baltimore on June 16, 2016.

Defendant substantiates its version of events by providing Collins' declaration, as

well as a hotel booking and flight itinerary indicating that she departed Baltimore

in the early afternoon on June 16, 2016.  Dec. of Ann Collins, ECF No. 91-36 at

PageID ## 1825-26; ECF No. 91-38.

    In his briefing, Plaintiff states that he did not immediately report the

harassment out of "fear of retaliation."  Pl.'s Opp'n., ECF No. 104 at PageID

# 1989.  Nevertheless, Plaintiff further claims that Collins immediately began

engaging in "constant retaliation" against him for refusing her advances.  *Id.* at

PageID # 1990.  Plaintiff does not provide any evidence to corroborate this

allegation.

    On August 17, 2017, Erteschik, on behalf of HDRC, sent Bassett a

letter regarding the "long running problem" of his "lack of billing for legal fees

that are owed."  ECF No. 91-5 at PageID # 1695.  The letter stated that "HDRC

Policies and Procedures clearly state that at the conclusion of any successful

litigation, the attorney shall file for any fees owed.  Clearly you are in violation of

---

[1] Plaintiff failed to provide a declaration or affidavit setting forth the events of June 16, 2016.  At most, Plaintiff provides emails in which he complains to his supervisor, Erteschik, and HDRC Board Member, Shawn Luiz, that Collins sexually harassed him.  *See, e.g.*, ECF Nos. 75-6 at PageID # 1181; 75-10 at PageID # 1188; 75-12 at PageID # 1193.  Because Plaintiff does provide emails complaining of the event, the court accepts as true (for purposes of these Motions) the allegations that an unwanted sexual advance took place on June 16, 2016.

these policies." *Id.* The letter informed Bassett that he would have until

September 30, 2017 to complete his billing and, failing that, he would be "placed

on a probationary status as an employee." *Id.* Additionally, if Bassett's billing

remained outstanding after September 30, "further personnel action as per the

Policies will be taken, which would include the possibility of termination." *Id.*

On or about August 23, 2017, Bassett reported—for the first time—

his allegations of Collins' behavior on the night of June 16, 2016 to Erteschik.

SAC, ECF No. 66 at PageID # 1011. In the same conversation, Bassett also

reported his suspicions that Collins was engaging in financial mismanagement,

including embezzling HDRC funds for personal use and providing an excess

benefit contract to her friend and business partner.[2] Pl.'s Opp'n, ECF No. 104 at

PageID ## 1991-92. Bassett suspected financial mismanagement because HDRC

employees were not going to be receiving bonuses for the 2017 fiscal year, because

he did not know what had happened to a $67,250 check he had deposited with

HDRC, and because—without explaining why—"Ann Collins fits the profile of an

embezzler." ECF No. 104 at PageID ## 1991-92; *see also* ECF No. 75-6 at

PageID # 1181; ECF No. 75-7 at PageID # 1185.

---

[2] There is no evidence in the record regarding the date that Bassett first reported Collins' alleged sexual harassment. But it is clear that Bassett did make such a report, and the parties do not dispute that this occurred on or about August 23, 2017. *See* ECF No. 74-1 at PageID ## 1129-31, 1138-39.

In September 2017, Bassett made several additional reports of the same allegations to Erteschik, as well as to then-HDRC board member and attorney Shawn Luiz. *See* ECF Nos. 75-5, 75-6, 75-8, 75-12. In his reports to Luiz, Bassett accused Erteschik of being "complicit" in Collins' retaliation and of colluding with Collins in financial mismanagement, including through embezzling funds and implementing illegal contracts. ECF No. 75-6 at PageID # 1180. He further complained that both Collins and Erteschik are "old, lazy, incompetent, and corrupt." *Id.*

After making his reports to Erteschik and Luiz, Plaintiff alleges in his briefing—again without providing any supporting evidence—that Defendant's retaliation intensified, with Erteschik and Collins "malicious[ly]" "non-sexual[ly]" harassing him, "sabotaging" his work product, "humiliating" him, downgrading his job performance, threatening to terminate him, and ordering him to complete his billing. SAC ECF No. 66 at PageID ## 1012-13, 1017, 1020.

Plaintiff further alleges—without any factual support—that Collins was "impersonating" Erteschik and "cyber-bullying" Plaintiff by sending emails from Erteschik's account. *Id.* at PageID # 1021. While there are email exchanges between Erteschik and Bassett in the record, they do not provide any indication that Collins was impersonating Erteschik or that Bassett was being cyber-bullied. Rather, in his emails, Erteschik repeatedly stressed that he was trying to work with

Bassett to address his concerns and was "cut[ting] him a bunch of slack."  *See, e.g.*,

ECF No. 91-7; ECF No. 91-12; *see also* ECF Nos. 104-8, 104-9.  By contrast,

Bassett's emails to Erteschik were aggressive, insulting, and threatening.  For

example, Bassett called Erteschik "incompetent" and the "worst lawyer [HDRC]

has ever hired."  ECF No. 75-6 at PageID # 1183.  On one notable occasion,

Bassett called Erteschik a "little poodle" who was being used as a "shit shield" for

"Ann [Collins]'s vengeance."  *Id.*  Bassett went on to threaten that if HDRC

attempted to discipline him, "then there will be hell to pay."  *Id.*  And in an email

to Luiz, Bassett stated that he had "[y]elled at" Erteschik.  *Id.* at PageID # 1181.

 Bassett interacted with other HDRC employees in a similarly

inappropriate manner.  In their declarations, HDRC staff, management, and board

members characterize Bassett's conduct as rude, aggressive, and condescending

and note that he appeared increasingly "disheveled" and "intoxicated" in the years

leading up to his termination.  *See, e.g.*, Dec. of Louis Erteschik, ECF No. 76-1 at

PageID # 1247; Dec. of Jane Miyahara, ECF No. 91-47 at PageID # 1955; Dec. of

Maryellen Markley, ECF No. 91-46 at PageID ## 1934, 1936, 1942.  Emails

written by Bassett (entered into the record by both Plaintiff and Defendant) also

demonstrate this bizarre behavior.  *See, e.g.*, ECF No. 75-6 at PageID # 1180-81

(Bassett calls Collins a "dominatrix" and Erteschik "Ann's 'bitch'" and a

"cuckold"); ECF No. 91-16 at PageID # 1735 (Bassett accuses Collins of having

"diminished mental capacity"); ECF No. 91-17 at PageID ## 1741-43 (Bassett

calls HDRC Office Supervisor, Jane Miyahara, a "lowly secretary" with "issues"

who is "not worth [his] time"; Bassett describes his clients as "[m]om's with

mental health issues"); ECF No. 75-5 at PageID # 1176 (Bassett calls Collins

"nuts" and calls Erteschik "incompetent" and the "laziest guy I have ever known");

*see also, e.g.*, ECF Nos. 75-12, 75-19, 91-15, 91-20, 91-21, 91-22, 91-24.

On April 6, 2018, Erteschik received a complaint about Bassett from

HDRC clients, the parents (mother and father) of a disabled child.  The clients

complained that Bassett had "dropped the ball" on their child's case and that he

had sent them several emails they found to be "very unprofessional," "demeaning,"

and "completely condescending."  ECF No. 91-27 at PageID # 1790-92, 1794.  In

these emails, Bassett told the clients that their concerns about a settlement

agreement were "just bologna," stated that the father "needed some [cognitive

behavioral therapy]," and demanded that the mother "stop with the calls and

emails."  *Id.* at PageID # 1795.  Bassett also sent the clients—apparently

inadvertently—"what [they] perceived to be a pretty hostile email," in which he

complained about them, stating "[p]arents . . . my God . . . I hope they just fire me"

and "[c]ry me a river."  *Id.* at PageID # 1786-87.

Ten days later, on April 16, 2018, HDRC responded to the complaint

by placing a formal reprimand in Bassett's file.  ECF No. 91-14 at PageID # 1726.

Bassett reacted with outrage, claiming the complaint was a "fake" that had been "fabricated" by Collins.  ECF No. 77-1 at PageID # 1368.

Shortly thereafter, HDRC received a second complaint from another of Bassett's clients.  ECF No. 91-1 at PageID # 1647.  The client complained that Bassett was not responding to her emails and that he was "very off-putting" when she did manage to get in touch with him.  *Id.*  When Erteschik offered to speak with Bassett about the client's concerns, she was nervous about the prospect, stating "well, I don't want him to yell at me."  *Id.*  When Erteschik brought the complaint to Bassett's attention, Bassett again claimed that the complaint had been fabricated by Collins and that (anomalously) the client had a "crush" on Erteschik. ECF No. 77-1 at PageID # 1369.  In his briefing, Bassett maintains that both clients' complaints were fabricated.  But neither at the time, nor in the record before the court, has Plaintiff provided any evidence to show that the complaints were anything but genuine.

On May 1, 2018, HDRC Office Supervisor, Jane Miyahara, filed a complaint against Bassett based on a telephone conversation she had with him that same day.  ECF No. 91-7 at PageID # 1699.  In her complaint, Miyahara explained that she had called Bassett to remind him to submit his timesheets and that he responded by yelling at her and going on a "crazy rant" about Collins, during which he screamed that Collins was a "bitch."  *Id.* at PageID # 1700; Dec. of Jane

11

Miyahara, ECF No. 91-47 at PageID # 1953-55.  Erteschik met separately with

Miyahara and Bassett to discuss the incident (it is unclear from the record when

these meeting occurred).  ECF No. 91-1 at PageID # 1651.  Bassett disputed

Miyahara's account, saying that he did not shout and that he would never call

anyone a "bitch" (although he had previously called Erteschik Collins' "bitch" in

an email to Shawn Luiz, ECF No. 75-6 at PageID # 1180-81).  ECF No. 91-15 at

PageID # 1728-29.  Based on his conversations with both parties, Erteschik found

Miyahara's version of events more credible.  ECF No. 91-1 at PageID # 1651.

On the afternoon of May 1, 2018, Bassett was placed on probation.

ECF No. 91-7 at PageID # 1699.  In an email to Bassett, Erteschik explained that

the probation was a consequence of Bassett's continuing disrespect for HDRC

management, complaints received from clients, and the recent complaint from

Miyahara.  *Id.*  Erteschik also warned that any more abusive behavior from Bassett

would result in his termination.  *Id.*; ECF No. 91-1 at PageID # 1651.

On May 31, 2018, Bassett wrote to Shawn Luiz claiming, with no

supporting evidence, that Miyahara's complaint had been fabricated by Collins.

ECF No. 75-9 at PageID # 1187.  Bassett also reiterated his allegations of sexual

harassment and financial mismanagement, stating that he was "ready to go to the

. . . authorities" with claims such as "embezzlement, money mismanagement, sex harassment, tax fraud, bank fraud, false reporting to a federal agency, [and] conspiracy" and promising to "sue [HDRC] into bankruptcy." *Id.*

In June 2018, Bassett brought his allegations directly to the HDRC Board of Directors. *See* ECF No. 76-21 at PageID # 1355. The Board agreed to investigate Bassett's complaints pursuant to the HDRC Policies and Procedures Manual, but also voiced concerns about his continued outstanding billing. *Id.* at PageID ## 1353-56. On June 18, 2018 and July 2, 2018, Bassett secretly recorded phone conversations between himself and Erteschik during which Bassett reiterated his allegations of harassment and financial crime and Erteschik stated that he did not want to fire Bassett, but rather wanted to work with him to find an amicable solution. *See generally* ECF Nos. 104-8, 104-9.

On July 6, 2018, HDRC Board Vice President, Maryellen Markley, launched an internal investigation into Bassett's complaints. ECF No. 91-23 at PageID # 1770. As part of this investigation, Markley met with and interviewed Bassett. ECF No. 91-46 at PageID ## 1938, 1941. In her declaration, Markley explained that she felt harassed and threatened by Bassett during the interview, with Bassett calling her a "fraud," showing her a "dossier" filled with private information about herself and her family, threatening to ruin her reputation in Honolulu, and demanding $375,000. *Id.* at PageID ## 1942-46, 1949.

On July 9, 2018, Bassett wrote to Louis Erteschik to "give [him] an opportunity to purge" Bassett's disciplinary file. ECF No. 91-24 at PageID # 1778. In the same email, he accused Maryellen Markley of being "a fraud" who falsely holds herself out as a psychologist. *Id.*

On July 10, 2018, Bassett received the results of Markley's investigation, which concluded that his allegations had "no merit." ECF No. 91-23 at PageID ## 1772, 1774, 1776. Shortly thereafter, Bassett wrote to the Board and to Erteschik again claiming that Markley is a "fraud." ECF No. 75-19 at PageID ## 1223, 1225.

On July 12, 2018, Bassett sent Erteschik an email claiming that Miyahara's May 1, 2018 complaint was "false and defamatory" and demanding that she retract it. ECF No. 75-13 at PageID # 1195.

On July 13, 2018, Bassett was fired from HDRC by Erteschik, who was acting upon advice of an employment lawyer. ECF No. 91-9 at PageID # 1705; ECF No. 91-1 at PageID # 1667. Bassett's letter of termination stated that he was being fired due to "numerous incidents of abusive behavior toward staff, clients and more recently Board members" in violation of the HDRC Policies and Procedures Manual. ECF No. 91-9 at PageID # 1705.

Until the end, HDRC—primarily through Erteschik— strove to work with Bassett to reach an amicable solution. For example, at Bassett's request,

14

HDRC agreed to hire Bassett' wife to help him complete his outstanding billing. ECF No. 91-1 at PageID # 1645-46. Erteschik also consulted with a licensed psychologist who "specializes in workplace issues" in order to better understand and address Bassett's actions. *Id.* at PageID # 1664. And because Bassett was approaching retirement age, Erteschik attempted to work with him to negotiate a special employment contract under which Bassett could only be fired for cause (a change from the typical at-will status of all HDRC employees) in order to protect him from unjustified termination before he could retire. *Id.* at PageID ## 1654-56. But because Bassett wanted to include a provision under which he could not be fired unless he was "unavailable or out of the country for forty-five consecutive days," the negotiation fell through. *Id.* at 1654-56; *see also* ECF No. 104-8 at PageID # 2024.

Erteschik was motivated to make these efforts given Bassett's "long history with the agency," ECF No. 91-7 at PageID # 1699, and out of "great respect for a lot of what [Bassett has] done in the past and also because [he] like[s] [Bassett] and [they] are friends." ECF No. 76-13 at PageID # 1320; *see also* ECF No. 91-1 at PageID ## 1653-54 ("I kept giving him chance after chance and was really trying to think of a way to make this work, in part because [Bassett] at one time did good work for the agency. I did have a high regard for him . . . the last thing I wanted to do was fire him.").

After his termination, Bassett sought unemployment insurance

coverage.  In an August 15, 2018 decision, the Hawaii Unemployment Insurance

Division ("UID") determined that Bassett is entitled to unemployment insurance

because there is "insufficient evidence to prove that [Bassett's] actions were not in

the best interest of his employer.  [Bassett] was discharged for other reasons than

misconduct connected to work."  ECF Nos. 91-30 at PageID # 1807.  HDRC

appealed this decision to the state Labor Relations Board ("LRB"), which held a

two-day hearing on November 7th and 26th.  ECF No. 91-44 at PageID # 1886;

ECF No. 75-18 (partial transcript of November 26 proceedings).  Ultimately, on

December 24, 2018, LRB reversed UID's decision, finding that Bassett was

discharged "for misconduct connected with work and therefore disqualified for

benefits pursuant to HRS section 383-30(2)."[3]  ECF No. 91-44 at PageID # 1889.

Bassett had 30 days to appeal the LRB decision but chose not to do so.  *Id.* at

PageID # 1890.

Meanwhile, on August 17, 2018, Bassett filed discrimination and

retaliation claims with the Hawaii Civil Rights Commission ("HCRC") and Equal

Employment Opportunity Commission ("EEOC").  ECF No. 91-35.  The two

agencies investigated the claim jointly under a work-sharing agreement.  ECF No.

---

[3] LRB also opined that Bassett's complaints against Collins and Erteschik were not
credible and found that Bassett had made false and malicious statements about HDRC staff and
management.  ECF No. 91-44 at PageID # 1888.

75-4 at PageID # 1175.  On September 6 and October 10, 2018, Bassett received

"right to sue" letters from EEOC and HCRC, respectively.  ECF Nos. 66-1, 66-2.

## B.    Procedural Background

On December 4, 2018, representing himself as a pro se attorney,

Bassett filed a 138-page Complaint alleging a variety of state and federal claims

against HDRC, Ann Collins, Louis Erteschik, Jane Miyahara, Shawn Luiz, and

HDRC Board President Andrew Grant.  ECF No. 1.  After several months of

motion practice, the case was referred to mediation in May 2019.  ECF No. 41.  No

resolution was reached through mediation, although Plaintiff eventually agreed to

drop Shawn Luiz as a defendant.  ECF No. 61.

On November 26, 2019, Plaintiff filed his SAC, which named HDRC

as the sole Defendant.  ECF No. 66.  Accordingly, all other Defendants were

terminated from the suit.  The SAC also distilled Plaintiff's allegations into five

claims: (1) sex-based discrimination in violation of Title VII; (2) failure to prevent

discrimination and harassment in violation of Title VII;[4] (3) retaliation and

wrongful termination in violation of Title VII; (4) whistleblower retaliation in

violation of the HWPA; and (5) wrongful termination in violation of the HWPA.

ECF No. 66 at PageID # 1004.

---

[4] As explained below, "failure to prevent discrimination or harassment" is not an
independent cause of action under Title VII.

On June 3, 2020, both parties filed Motions for Summary Judgment. ECF Nos. 73, 74.  On August 3, 2020, Defendant filed an Opposition to Plaintiff's Motion for Summary Judgment that also served as a "Cross-Motion for Summary Judgment as to All Remaining Claims."  ECF No. 90.[5]  On August 10, Defendant filed a Reply in support of its Motion for Summary Judgment.  ECF No. 93.  On September 8, Plaintiff filed his Opposition to Defendant's Motion for Summary Judgment and Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment.  ECF No. 104.  A hearing was held on October 26, 2020.  ECF No. 113.  At the hearing, Plaintiff was ordered to submit a filing by November 2, 2020, addressing whether his second claim (failure to prevent harassment under Title VII) constitutes an independent cause of action.  *Id.*  Plaintiff submitted his supplementary brief on November 5, 2020, ECF No. 114.

### III.  <u>LEGAL STANDARDS</u>

### A.    **Summary Judgment**

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential

---

[5] This filing was substantively identical to Defendant's original Motion for Summary Judgment, and the court construes the "cross-motion" as the original Motion.  ECF No. 95.

to that party's case, and on which that party will bear the burden of proof at trial."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of
Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of
informing the court of the basis for its motion and of identifying those portions of
the pleadings and discovery responses that demonstrate the absence of a genuine
issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th
Cir. 2007) (citing *Celotex*, 477 U.S. at 323). "When the moving party has carried
its burden under Rule 56[(a)], its opponent must do more than simply show that
there is some metaphysical doubt as to the material facts [and] come forward with
specific facts showing that there is a genuine issue for trial." *Matsushita Elec.
Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal
quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,
247-48 (1986) (stating that a party cannot "rest upon the mere allegations or
denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on
which a reasonable fact finder could find for the nonmoving party, and a dispute is
'material' only if it could affect the outcome of the suit under the governing law."
*In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at
248). When considering the evidence on a motion for summary judgment, the

court must draw all reasonable inferences on behalf of the nonmoving party.

*Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille*

*Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence

of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn

in his favor.") (citations omitted).

## B.    Plaintiff's Pro Se Attorney Status

Plaintiff was a successful litigator for over 20 years and is currently

representing himself as a pro se attorney.[6]  Although pro se filings are ordinarily

"held to less stringent standards," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), pro

se attorneys "cannot claim the special consideration which the courts customarily

grant to *pro se* parties," *Bassett v. Hawaii Disability Rights Center*, 2019 WL

2236075, at *3 (D. Haw. May 23, 2019) (quoting *Holtz v. Rockefeller & Co.*, 258

F.3d 62, 82 n.4 (2d Cir. 2001)); *see also Mann v. Boatright*, 477 F.3d 1140, 1148

n.4 (10th Cir. 2007); *Godlove v. Bamberger, Foreman, Oswald & Hahn*, 903 F.2d

1145, 1148 (7th Cir. 1990) ("Ordinarily, we treat the efforts of *pro se* applicants

gently, but a *pro se* lawyer is entitled to no special consideration."); *Richards v.*

*Duke Univ.*, 480 F. Supp. 2d 222, 234 (D.D.C. 2007); *Price v. Peerson*, 2014 WL

---

[6] Plaintiff is listed as counsel in 47 cases filed in the District of Hawaii between 1999 and 2019.  *See* CM/ECF, District of Hawaii, Query, https://ecf.hid.circ9.dcn/cgi-bin/iquery.pl) (last accessed Nov. 20, 2020) (Type "Bassett" in the Last Name field, "Matthew" in the First Name field, and "Charles" in the Middle Name field, then click on "Run Query").

12579823, at \*4 (C.D. Cal. May 15, 2014), *aff'd*, 643 Fed. App'x 637 (9th Cir. 2016).  Accordingly, the court will not afford Plaintiff any special consideration despite his pro se status.

## IV.  ANALYSIS

Plaintiff alleges five causes of action: (1) sexual harassment under Title VII; (2) failure to prevent discrimination and harassment under Title VII; (3) retaliation under Title VII; (4) retaliation under the HWPA; and (5) wrongful termination under the HWPA.  Viewing all available evidence in the light most favorable to Plaintiff, no genuine issues of material fact support his claims.  A discussion of each claim follows.

## A.    Title VII—Sex-based Discrimination

As Bassett conceded during the October 26 hearing, his sex-based discrimination claim arises solely from Ann Collins' alleged sexual harassment on the night of June 16, 2016.

In order to seek judicial review of Title VII claims, plaintiffs must first timely exhaust their administrative remedies.  42 U.S.C. § 2000e-5(e)(1); *see also Delaware State College v. Ricks*, 449 U.S. 250, 255-56 (1980).  Where, as here, Title VII claims are investigated jointly by EEOC and a state agency (here, HCRC), administrative complaints must be filed within 300 days of the allegedly

21

discriminatory event.  42 U.S.C. § 2000e–5(e)(1).[7]  Otherwise, the complaint is

time-barred and judicial recourse is foreclosed.  *See Nat'l R.R. Passenger Corp. v.*

*Morgan*, 536 U.S. 101, 122 (2002) ("[A] Title VII plaintiff raising claims of

discrete discriminatory or retaliatory acts must file his charge within the

appropriate time period—180 or 300 days—set forth in 42 U.S.C.

§ 2000e-5(e)(1).").

Here, Plaintiff did not initiate his sex-based discrimination claim with

the EEOC and HCRC until August 17, 2018—792 days after Plaintiff claims the

sexual harassment occurred (June 16, 2016).  ECF Nos. 91-35, 75-4.  As such, the

sex-based discrimination claim is time-barred.[8]  Accordingly, Defendant's Motion

for Summary Judgment as to claim one is GRANTED.

---

[7] In the absence of a work-share agreement, complaints must be filed with the EEOC within 180 days.  *Id.*

[8] Plaintiff attempts to argue that his claim is saved by the continuing violation doctrine. That is, Plaintiff argues that the harassment he alleges occurred in Baltimore on June 16, 2016 and the retaliatory conduct he alleges occurred as a result of his reporting that sexual harassment are both part of a single, unceasing Title VII violation.  *See* ECF No. 104 at PageID # 1998.  But "discrete . . . acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges" because "[e]ach discrete . . . act starts a new clock for filing charges alleging that act."  *Bird v. Dep't of Human Servs.*, 935 F.3d 738, 747 (9th Cir. 2019) (quoting *Nat'l R.R. Passenger*, 536 U.S. at 113).  Moreover, a plaintiff's "assertion that [a] series of discrete acts flows from a company-wide, or systematic, discriminatory practice will not succeed in establishing the employer's liability for acts occurring outside the limitations period."  *Id.*  In short, courts refuse to apply the continuing violation doctrine "to rescue individualized claims that are otherwise time-barred."  *Id.* at 748.

The parties also discuss the equitable tolling doctrine.  But equitable tolling is likewise inapposite here.  "[A] litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  *Smith v. Davis*,

(continued . . . )

## B.    Failure to Prevent Discrimination and Harassment

Bassett next alleges a claim for "failure to prevent discrimination and harassment." ECF No. 66 at PageID # 1031. The California Fair Employment and Housing Act contains such a cause of action. *See* Cal. Govt. Code § 12940(k). But "failure to prevent discrimination and harassment" does not appear to be an independent claim under Title VII or otherwise applicable to this case.[9] *See Emens v. Pleasant Valley Sch. Dist.*, 2020 WL 2494743, at *2-3 (C.D. Cal. Jan. 17, 2020)

---

953 F.3d 582 (9th Cir. 2020) (quotation omitted); *see also Nat'l R.R. Passenger*, 536 U.S. at 121 (discussing application of equitable tolling in Title VII cases). Plaintiff did not diligently pursue his rights. He waited for over two years to file his claim. And there is no evidence in the record to suggest that any "extraordinary circumstance" prevented Plaintiff from timely filing.

[9] At the October 26, 2020 hearing, the court expressed skepticism about the existence of "failure to prevent discrimination and harassment" as a stand-alone cause of action under Title VII and ordered Plaintiff to submit a supplemental brief presenting his argument that such a cause of action exists (or, in the alternative, to submit a short filing conceding that it does not). ECF No. 113. On November 5, 2020, Plaintiff filed his supplementary brief. ECF No. 114. Plaintiff points to three Ninth Circuit cases for the proposition that "failure to prevent discrimination and harassment" is a cause of action under Title VII: *Fuller v. City of Oakland*, 47 F.3d 1522 (9th Cir. 1995), *Equal Employment Opportunity Comm'n v. Hacienda Hotel*, 881 F.2d 1504 (9th Cir. 1988), and *Intlekofer v. Turnage*, 973 F.2d 773 (9th Cir.1992). But none of these cases indicates that such a cause of action exists. Rather, each case stands for the proposition that an employer may only be held liable for recognized Title VII violations (e.g., hostile work environment) perpetrated by its employees if the employer knew or should have known of the employees' conduct and failed to take sufficient action to address it. *See Hacienda Hotel*, 881 F.2d at 1515-16 (reviewing hostile work environment claim and explaining that employers can be held liable for the Title VII violations of their employees only if they "fail[ed] to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of reasonable care should have known."); *Fuller*, 47 F.3d at 1529 (same); *Intlekofer*, 973 F.2d at 777-78 (reviewing sexual harassment, sexual discrimination, and retaliation claims and applying the same standard for employer liability).

Plaintiff has failed to demonstrate that "failure to prevent discrimination and harassment" is an independently actionable claim under Title VII. Moreover, the standard for employer liability for employee conduct is irrelevant here because Plaintiff alleges that management-level employees (Collins and Erteschik) perpetrated the harassment in the first instance.

(granting motion to dismiss for a claim of "failure to prevent discrimination under Title VII" because "[t]his Court has searched both caselaw and the text of Title VII extensively, and cannot find such a cause of action within the cited federal law."); *see also Morris v. Verizon Fed., Inc.*, 2017 WL 3379176, at *13 (D. Haw. Aug. 3, 2017) ("Lastly, Plaintiff alleges claims for failure to investigate and failure to prevent discrimination and harassment in violation of Title VII . . . counsel for both parties agree[] that these claims are predicated on Plaintiff's harassment and discrimination claims.  That is, they only survive to the extent that Plaintiff's harassment and discrimination claims survive.").  Accordingly, Defendant's Motion for Summary Judgment with respect to claim two is GRANTED.

## C.    Retaliation Claims

The remainder of Bassett's claims under both Title VII and the HWPA arise from precisely the same alleged conduct: (1) creation of a hostile work environment in retaliation for Bassett's engaging in protected activity;[10] and (2) discrete adverse employment actions taken against Bassett for the same reason, namely, placing a reprimand letter in his personnel file, placing him on probation, and terminating his employment.

---

[10] Hostile work environment is an actionable basis for a retaliation claim under Title VII. *Ray v. Henderson*, 217 F.3d 1234, 1245 (9th Cir. 2000) ("Harassment is obviously actionable when based on race and gender.  Harassment as retaliation for engaging in protected activity should be no different—it is the paradigm of adverse treatment that is based on retaliatory motive.") (internal quotations omitted).

At the October 26 hearing, the parties agreed that the fate of the Title VII and HWPA retaliation claims are intertwined—that is, if the Title VII claims survive summary judgment, the corresponding HWPA claims will do the same. Likewise, if the Title VII claims do not survive summary judgment, the HWPA claims, too, must fail. This is because Bassett never reported Collins' alleged financial crimes separately from her alleged sexual harassment. Thus, it is impossible to identify any retaliatory conduct as being in response to activity protected by the HWPA that is not protected by Title VII. Moreover, the standard applied to evaluate retaliation claims under Title VII and the HWPA is the same. *See Tagupa v. VIPdesk, Inc.*, 125 F. Supp. 3d 1108, 1119 (D. Haw. 2015). The court thus analyzes the Title VII claims in detail before briefly considering the HWPA claims. As discussed in more detail below, Bassett has failed to establish any genuine issue of material fact that would enable either the hostile work environment or discrete adverse employment action claim to survive summary judgment.[11]

---

[11] Defendant additionally argues that Plaintiff's retaliation claims are precluded by the factual findings made by the LRB in deciding Plaintiff's unemployment insurance claim. ECF No. 74-1 at PageID ## 1140-41. Although state administrative proceedings do not have preclusive effect on federal Title VII claims, *see University of Tennessee v. Elliott*, 478 U.S. 788, 798 (1986), they can, if of a sufficiently judicial character, preclude courts from reconsidering issues of fact. *Id.* ("[W]hen a state agency 'acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts.") (quoting *United States v. Utah Constr. & Mining Co.*, 384 U.S.

(continued . . . )

25

### 1.    *Title VII*[12]

Title VII prohibits employers from retaliating against an employee

because that employee "has opposed any practice made an unlawful employment

practice by this subchapter, or because he has made a charge, testified, assisted, or

participated in any manner in an investigation, proceeding, or hearing under this

subchapter."  42 U.S.C. § 2000e-3(a).

---

394, 422 (1966)).  In Hawaii, in order for unreviewed state administrative agency determinations to have preclusive effect in a federal action, "[t]he state agency must be acting in a judicial capacity . . . disputed issues must have been properly before agency[,] and . . . parties must have had an adequate opportunity to litigate."  *Carroll v. Maui Cnty.*, 866 F. Supp. 459, 466 (D. Haw. 1994) (concluding "Hawaii courts would not give preclusive effect to unemployment compensation proceedings in a subsequent proceeding for claims sounding in wrongful discharge, where the plaintiff did not have a full and fair opportunity to litigate its claims").  Here, there is insufficient evidence in the record to determine whether Plaintiff had a "full and fair opportunity to litigate" before the LRB.  But because Plaintiff's claims fail regardless, the court does not engage in a preclusion analysis here.

[12] Defendant argues that Plaintiff's Title VII claims are time-barred because the "predicate offense" (i.e., the alleged sexual harassment on June 16, 2020) occurred more than 300 days before Bassett filed his EEOC report in August of 2018.  ECF No. 74-1 at PageID # 1139.  But, for a retaliation claim, the statute of limitations operates from the date on which the retaliatory conduct occurred, not the date of the "predicate" offense.  *See, e.g.*, *Hale v. Haw. Publ'ns, Inc.*, 468 F. Supp. 2d 1210, 1222 (D. Haw. 2006) ("Any discrete *act of retaliation* that transpired prior to the [filing deadline] is time barred.") (emphasis added); *see also Nat'l R.R. Passenger Corp.*, 536 U.S. at 113 ("Each discrete [retaliatory] act starts a new clock for filing charges alleging that act.  The charge, therefore, must be filed within the 180- or 300-day time period after the discrete . . . act occurred.").  Here, the alleged discrete adverse employment actions occurred in April, May, and July of 2018—well within 300 days of Plaintiff's filing with EEOC (in August 2018).  The discrete adverse employment action claims are not time-barred.

Further, hostile work environment claims "will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period."  *Nat'l R.R. Passenger Corp.*, 536 U.S. 101 at 122.  Plaintiff alleges that Defendant created a hostile work environment from June 2016 up until his termination in July 2018.  The hostile work environment claim is not time-barred.

At the October 26 hearing, the parties agreed that the appropriate analytical framework to apply to Plaintiff's Title VII retaliation claims is that set forth by the Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973).  Under the *McDonnell Douglas* framework, the plaintiff must first establish a prima facie case of retaliation by showing "(1) involvement in a protected activity, (2) an adverse employment action, and (3) a causal link between the two."  *Brown v. City of Tuscon*, 336 F.3d 1181, 1188 (9th Cir. 2003) (quoting *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000)).  Once a plaintiff has made a prima facie showing, "the burden of production, but not persuasion, shifts to [the defendant] to articulate some legitimate, nondiscriminatory reason for the challenged action."  *Nicholson v. Hyannis Air Ser., Inc.*, 580 F.3d 1116, 1126 (9th Cir. 2006) (quoting *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1123-24 (9th Cir. 2000)).  "Should the defendant carry its burden, the burden then shifts back to the plaintiff to raise a triable issue of fact that the defendant's proffered reason was a pretext for unlawful [retaliation]."  *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1168 (9th Cir. 2007).[13]

---

[13] The *McDonnell Douglas* framework is "a tool to assist plaintiffs at the summary judgment stage" in cases where there may be "difficulties [in] proving intent to discriminate in a disparate treatment context."  *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 854-55 (9th Cir. 2002). Alternatively, a plaintiff may "simply produc[e] direct or circumstantial evidence demonstrating that a discriminatory [or retaliatory] reason more likely than not motivated the employer." *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1105 (9th Cir. 2008) (quoting *McDonnell Douglas*, 411 U.S. at 931).  Here, Plaintiff's claims would fail under either standard.

### a.    Hostile work environment

Plaintiff has failed to make a prima facie case that HDRC retaliated against him by creating a hostile work environment.  The first element of a prima facie case of retaliation—that Plaintiff engaged in protected activity under Title VII—is easily met.  Reporting sexual harassment to an employer, as Plaintiff did here, is a protected act.  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002) (explaining that "[c]ertainly . . . fil[ing] an internal complaint regarding . . . sexually harassing behavior" is protected activity under Title VII); *see also Brooks*, 229 F.3d at 928.

Next, Plaintiff must demonstrate that he was subject to an adverse employment action, defined as "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity."  *Ray*, 217 F.3d at 1243-44.  Under a hostile work environment theory, Plaintiff can meet his burden only by showing that the harassment is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Id.* at 1245 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *see also Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008).  To determine whether an environment is hostile enough to support an actionable claim, courts consider the "totality of the circumstances," including the "frequency of the discriminatory

28

conduct; its severity; whether it is physically threatening or humiliating, or a mere

offensive utterance; and whether it unreasonably interferes with an employee's

work performance." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71

(2001) (per curiam) (citation omitted).  The alleged conduct must be both

objectively and subjectively offensive.  *Fuller v. Idaho Dep't of Corr.*, 865 F.3d

1154, 1161 (9th Cir. 2017).  That is, "the plaintiff must show that [he] perceived

the work environment as hostile and that a reasonable person in the plaintiff's

position would have perceived it as hostile."  *McAlman v. Bernhardt*, 2019 WL

3754572, at *5 (D. Haw. Aug. 8, 2019).

   Here, a reasonable person would not—based on the *evidence* (or lack

of evidence) presented to the court—perceive the conduct alleged by Bassett as

hostile.  In his briefing, Bassett states that Defendant "malicious[ly]" harassed him

by "sabotaging" his work product, humiliating him, downgrading his job

performance, fabricating complaints against him, "cyber-bullying" him,

threatening to terminate him, and ordering him to complete his required billing.

*See, e.g.*, SAC, ECF No. 66 at PageID ## 1012-13, 1017, 1020.  But Bassett

generally does not cite to evidence in the record when making these allegations.

At times, Bassett vaguely refers to the record, with unhelpful citations like "see

Exhibit."  ECF No. 104 at PageID # 1990.  Defendant's citations are often

similarly unhelpful.

Courts are not required, like "pigs, hunting for truffles," to search through the record for evidence to support litigants' claims.[14] *See U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Nevertheless, the court considered the materials submitted by the parties in an attempt to determine whether any evidence supports Plaintiff's allegations. Several of Bassett's assertions, such as claims that HDRC "sabotaged" him and downgraded his work performance, are totally devoid of evidentiary support. For other allegations, while the available evidence suggests that conduct described by Bassett occurred, the evidence does not support his characterization of that conduct.

Indeed, Bassett's characterizations of HDRC conduct is at best unsupported—and more often flatly contradicted—by the evidence in the record. For example, Bassett claims that Collins impersonated Erteschik and cyber-bullied him by sending harassing emails from Erteschik's account. SAC, ECF No. 66 at PageID # 1021. Although the record contains emails from Erteschik to Bassett, there is no evidence supporting the allegation that Collins impersonated Erteschik. Moreover, Bassett's descriptions of these emails as "cyber-bullying" is a gross mischaracterization—in fact, the emails show that Erteschik was attempting to

---

[14] Additionally, under Local Rule 56.1(f), "[w]hen resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties. Further, the court shall have no independent duty to review exhibits in their entirety, but rather will review only those portions of the exhibits specifically identified in the concise statements."

work reasonably with Bassett.  *See, e.g.*, ECF No. 76-13 at PageID # 1320

(Erteschik writes to Bassett that he has "great respect for a lot of what [Plaintiff

has] done in the past and . . . like[s] [Bassett] and [they] are friends").  Meanwhile,

Bassett hurled insults at Erteschik, calling him the "worst lawyer [HDRC] has ever

hired," incompetent, and a "little poodle."  ECF No. 75-6 at PageID # 1183.

Similarly, Bassett alleges that he received "malicious" "threats of

termination."  SAC, ECF No. 66 at PageID ## 1012-13.  Evidence in the record

shows that HDRC did inform Bassett on several occasions that, pursuant to

HDRC's Policies and Procedures Manual, continued bad behavior could result in

his future termination.  *E.g.*, ECF No. 91-5 at PageID # 1695; ECF No 91-7 at

PageID # 1699; No. 91-14 at PageID # 1726.  Erteschik also warned Bassett of the

possibility of future termination in several emails and phone calls.  But far from

threatening, Erteschik stated that he did not want to fire Bassett, even offering to

change Bassett's employment status from at-will to for-cause to better shield him

from unjustified termination.  ECF Nos. 91-1 at PageID ## 1654-56; *see also*

*generally* ECF Nos. 91-11, 91-12, 91-22, 104-8, 104-9.  Considering the totality of

the circumstances, including Bassett's own inappropriate behavior, these warnings

were not, objectively, "malicious" threats.

In contrast, evidence in the record shows that Bassett blatantly

threatened HDRC, stating, for example, that if he was terminated "there will be

31

hell to pay" and that he would "sue the [HDRC] into bankruptcy." ECF No. 75-6
at PageID # 1183; ECF No. 75-9 at PageID # 1187.

Bassett next alleges that Defendant fabricated complaints against him
by fellow staff members and HDRC clients. It is undisputed that complaints were
made. But there is no evidence to suggest that the complaints were fabricated.
Bassett submitted no declaration, or any other evidence, that the complaints were
fake while the record is replete with emails and declarations from HDRC clients
and employees complaining of Bassett's unprofessionalism, rudeness, and
aggression. *See, e.g.*, ECF No. 91-27 at PageID # 1791-92, 1794; ECF No. 91-7 at
PageID # 1700; Dec. of Louis Erteschik, ECF No. 76-1 at PageID # 1247; Dec. of
Jane Miyahara, ECF No. 91-47 at PageID # 1953-55; Dec. of Maryellen Markley,
ECF No. 91-46 at PageID ## 1934, 1936, 1942.

Finally, Bassett alleges that HDRC ordered him to complete his
billing. But doing so was a required and important part of his job. ECF No. 91-5
at PageID# 1695. Being asked to comply with the terms of one's employment
cannot be considered harassment.

In short, Bassett has not provided the evidence necessary to make a
prima facie showing that he was subject to a hostile work environment. If
anything, the evidence in the record reveals that Bassett acted with hostility toward

his fellow employees and HDRC clients.  As such, the inquiry ends here and Bassett's claim must fail.

   b. *Discrete adverse employment actions*

   Plaintiff satisfies the first two elements required to state a prima facie case for retaliation through discrete adverse employment actions.  The protected activity under this theory is the same as with the hostile work environment claim— Bassett's reporting his sexual harassment allegations to his employer.  It is also undisputed that Bassett was subsequently subject to three adverse employment actions.  First, a reprimand letter was placed in his personnel file, apparently permanently, on April 16, 2018.  *See Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 641 (9th Cir. 1998) (assuming for the purpose of a prima facie case that the issuance of a warning letter constituted an adverse employment action).  Next, Bassett was placed on probation on May 1, 2018.  *See Thomas v. City of Beaverton*, 379 F.3d 802, 811 (9th Cir. 2004) (treating probation as an adverse employment action).  And, finally, Bassett was terminated on July 13, 2018.

   The third and final element of a prima facie retaliation claim is a causal link between the protected activity and the adverse employment action.  To satisfy this element, Plaintiff must show that Defendant's retaliatory motive was the "but for" cause of the adverse employment actions.  *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) ("Title VII retaliation claims must be

proved according to traditional principles of but-for causation.").  Plaintiff need not

show, however, that retaliation was the sole cause of the adverse action; he must

simply demonstrate "that the unlawful retaliation would not have occurred in the

absence of the alleged wrongful action or actions of the employer."  *Id.*  "The

causal link can be inferred from circumstantial evidence such as the employer's

knowledge of the protected activities and the proximity in time between the

protected activity and adverse action."  *Dawson v. Entek Int'l*, 630 F.3d 928, 936

(9th Cir. 2011).  Causation can be "inferred from timing alone where an adverse

employment action follows on the heels of protected activity."  *Villiarimo*, 281

F.3d at 1065.  By contrast, when the time lag between the protected activity and

adverse employment action is too great, courts have "found the absence of a causal

link as a matter of law."  *Pratt v. Haw. Dep't of Pub. Safety*, 308 F. Supp. 3d 1131,

1147 (D. Haw. 2018) (collecting cases and noting that "time ranging from 42 days

up to three months has been found sufficient to establish temporal proximity"

while "a lapse of four or more months has been found to be too long").

Here, Defendant certainly knew of Bassett's protected activity

because Bassett reported his concerns internally to HDRC management (Erteschik)

and the HDRC Board.  But the evidence on timing is mixed.  Although Bassett

appears to have been making reports of harassment continuously, *see, e.g.*, ECF

No. 91-7 at PageID # 1699 (Erteschik emailing Bassett regarding Miyahara's May

1, 2018 complaint and stating that he has "listened to [Bassett's] rambling conversations . . . over many months" and that he is "sick of hearing about '[Bassett's] theory' about Ann"), it is also true that his first report occurred in August 2017—7 months before the first retaliatory act (the reprimand letter in April 2018).  Given this evidence, and because the claim fails on separate grounds, the court assumes without deciding that the causal element is satisfied and Plaintiff has established a prima facie case for retaliation.

The burden next shifts to Defendant to produce a legitimate, non-discriminatory reason for each adverse employment action.  *See Nicholson*, 580 F.3d at 1126.  Defendant meets that burden.

The first adverse employment action, the April 16, 2018 reprimand letter, was issued in response to a complaint HDRC received from Bassett's clients on April 6, 2018.  *See* ECF No. 91-27 at PageID # 1790-92, 1794 (clients complain that Bassett "dropped the ball" on their case and describe Bassett's emails as "very unprofessional," "demeaning," and "completely condescending."); ECF No. 91-14 at PageID # 1726 (memo explaining that reprimand letter was issued due to Plaintiff's "insulting and unprofessional" comments to clients).

Plaintiff's conduct only worsened after the reprimand was issued. Later in April, HDRC received a second complaint from another of Plaintiff's clients, reporting that Plaintiff was both rude and unresponsive.  ECF No. 91-1 at

PageID # 1647; ECF No. 77-1 at PageID # 1369.  Additionally, on May 1, 2018,

HDRC received a complaint about Bassett from HDRC Office Supervisor, Jane

Miyahara, who explained that Bassett shouted at her, went on a "crazy rant," and

called Collins a "bitch."  ECF No. 91-7 at PageID # 1700; Dec. of Jane Miyahara,

ECF No. 91-47 at PageID # 1953-55.  Bassett was placed on probation later the

same day in response to the two client complaints received in April, Plaintiff's

generally disrespectful treatment of HDRC staff and management, and the

complaint filed by Miyahara earlier in the day.  ECF No 91-7 at PageID # 1699.

Bassett's behavior did not improve while he was on probation.

Throughout May and June, Bassett continued to send rude and aggressive emails to

Erteschik.  *See, e.g.*, ECF No 91-17 at PageID # ## 1741-43 (Bassett calls

Miyahara, a "lowly secretary" with "issues" who is "not worth [his] time" and

describes his clients as "[m]om's with mental health issues"); ECF No. 91-16 at

PageID # 1735 (Bassett accuses Collins of having "diminished mental capacity");

*see also* ECF No. 91-20; ECF No. 91-21; ECF No. 91-22.  On June 18, 2018 and

July 2, 2018, Bassett secretly recorded phone conversations between himself and

Erteschik during which Erteschik stated that he did not want to fire Bassett, but

rather wanted to work with him to find an amicable solution.  *See generally* ECF

Nos. 104-8, 104-9.

36

On or about June 26, 2018, Bassett brought his allegations of sexual

harassment and financial crimes to the HDRC Board of Directors. *See* ECF No.

76-21 at PageID # 1355. And on July 6, 2018, HDRC Board Vice President,

Maryellen Markley, launched an internal investigation in response to Bassett's

complaints. ECF No. 91-23 at PageID # 1770. When Markley met with Bassett,

he exhibited the same aggressive and abusive behavior he had shown towards his

clients and Miyahara—shouting at Markley, calling her a "fraud," showing her a

"dossier" filled with private information about herself and her family, threatening

to ruin her reputation, and demanding $375,000. ECF No. 91-46 at PageID

## 1942-46, 1949. Markley reported this behavior to Erteschik, indicating that she

was "disturbed" by Bassett and was "convinced that this man is a huge liability to

the agency." ECF No. 91-29 at PageID # 1800.

Markley issued the results of her investigation on July 10, 2018,

finding Bassett's allegations to have no merit. *See generally* ECF No. 91-23. On

both July 9 and July 11, Bassett wrote to Erteschik and the HDRC Board, accusing

Markley of being a "fraud." ECF No. 91-24 at PageID # 1778; ECF No. 75-19 at

PageID # 1223. And on July 12, 2018, Bassett sent Erteschik an email claiming

that Miyahara's May 1, 2018 complaint was "false and defamatory" and

demanding that she retract it. ECF No. 75-13 at PageID # 1195.

On July 13, 2018, Bassett was fired from HDRC because of his "abusive behavior toward staff, clients and more recently Board members," all of which violated the HDRC Policies and Procedures Manual. ECF No. 91-9 at PageID # 1705. While Bassett's conduct toward Markley was, perhaps, the final straw, his termination was the culmination of years of bad behavior. To support the legitimacy of its reasons for terminating Bassett (as well as the prior adverse employment actions), Defendant has provided the declarations of Markley and HDRC employees, complaints from Miyahara and the HDRC clients, and a bevy of abusive, aggressive, and insulting emails sent from Bassett to HDRC staff, management, board members, and clients (and Bassett has introduced additional emails of the same ilk into evidence). *See, e.g.*, ECF No. 77-1 at PageID # 1369; Dec. of Louis Erteschik, ECF No. 91-1 at PageID # 1247; Dec. of Jane Miyahara, ECF No. 91-47 at PageID # 1955; ECF No. 91-14 at PageID # 1726; ECF No. 75-6 at PageID # 1180-81; ECF No. 91-16 at PageID # 1735; ECF No. 91-17 at PageID ## 1741-43; ECF No. 75-5 at PageID # 1176; *see also, e.g.*, ECF Nos. 75-12, 75-19, 91-15, 91-20, 91-21, 91-22, 91-24. Further, Defendant evaluated Bassett's behavior against the neutral standards applied to all HDRC employees as specified in the HDRC Policies and Procedures Manual. ECF No. 91-4.

Accordingly, the burden shifts back to Plaintiff to demonstrate that Defendant's legitimate, nondiscriminatory reasons were merely pretextual. "An

employee can prove pretext either: (1) directly, by showing that unlawful

discrimination more likely motivated the employer; or (2) indirectly, by showing

that the employer's proffered explanation is unworthy of credence because it is

internally inconsistent or otherwise not believable." *Mayes v. WinCo Holdings,*

*Inc.*, 846 F.3d 1274, 1280 (9th Cir. 2017). Direct evidence need not, but

circumstantial evidence must be, "specific and substantial." *Id.* at 1282; *see also*

*Tiraie v. Gavilan Joint Cmty. Coll. Dist.*, 821 Fed. App'x 846, 846 (9th Cir. 2020).

      Here, although Bassett repeatedly states in his briefing that

Defendant's reasoning was pretextual, he—again—offers no *evidence* (direct or

circumstantial) to support that bare allegation. Further, the evidence in the record

suggests that, far from looking for a pretext to take action against him, Defendant

strove to find amicable solutions, including agreeing to hire Bassett's wife to help

him with his billing, undertaking an investigation in response to Bassett's

complaints, and attempting to negotiate a special for-cause employment status to

shield Bassett from unjustifiable termination. ECF No. 91-1 at PageID ## 1645-

46, 1654-55; ECF No. 91-23. Because he has not produced any evidence of

pretext, Bassett has failed to meet his burden.

      In short, there are no genuine issues of material fact suggesting that

Defendant retaliated against Plaintiff for reporting Collins' alleged sexual

harassment—whether by creating a hostile work environment or by taking discrete

adverse employment actions.  Defendant's Motion for Summary Judgment is

GRANTED with respect to claim three.

### 2.    *Whistleblower Retaliation & Wrongful Termination*

Plaintiff's final two claims allege unlawful retaliation and wrongful

termination under the HWPA.  The HWPA provides, as relevant, that "[a]n

employer shall not discharge, threaten, or otherwise discriminate against an

employee regarding the employee's compensation, terms, conditions, location, or

privileges of employment because . . . [t]he employee . . . reports . . . to the

employer . . . a suspected violation of . . . law[.]"  HRS § 378-62.

Here, Bassett argues that Defendant retaliated in response to his

internal reports of alleged sexual harassment and financial crimes.  *See* ECF No. 66

at PageID ## 1033-34.  As mentioned above, Bassett never reported his allegations

of financial crimes separately from his allegations of sexual harassment.  As such,

the protected activity for the purposes of the HWPA claims is functionally the

same as the protected activity for the purposes of the Title VII claims.

Plaintiff's arguments under the HWPA are also identical to his

arguments under Title VII: that Defendant retaliated against him by (1) creating a

hostile work environment; and (2) taking discrete adverse employment actions

(i.e., the reprimand letter, probation, and termination).  *Id.* at PageID ## 1035-36.

And, as under Title VII, courts apply the *McDonnell Douglas* framework to

40

retaliation claims under the HWPA. *See Grilho v. Pioneer Hi-Bred Int'l, Inc.*, 2020 WL 2086486, at *3 (D. Haw. Apr. 30, 2020) ("In *Crosby v. State Department of Budget & Finance*, 76 Hawai'i 332, 342, 876 P.2d 1300, 1310 (1994), the Hawaii Supreme Court essentially adopted the familiar *McDonnell Douglas* burden-shifting framework for claims under Hawaii's Whistleblowers' Protection Act."); *see also Tagupa*, 125 F. Supp. 3d at 1119 (explaining that the prima facie elements of a retaliation claim under the HWPA are the same as those under Title VII) (citing *Crosby*, 76 Haw.at 342, 876 P.2d at 1310); *Griffin v. JTSI, Inc.*, 654 F. Supp. 2d 1122, 1131 (D. Haw. 2008) (same).

   In short, Plaintiff's HWPA claims "appear[] to be premised upon the exact same facts as those of [his] [Title VII] retaliation claim[s]." *Aoyagi v. Straub Clinic & Hosp., Inc.*, 140 F. Supp. 3d 1043, 1061 (D. Haw. 2015). Accordingly, the HWPA claims "must fail on the same grounds as those discussed above." *Id.*

///

///

///

///

///

///

///

41

# V. **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary

Judgment is GRANTED in full.  Accordingly, Plaintiff's Motion for Summary

Judgment is DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 20, 2020.



 /s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Bassett v. Haw. Disability Rights Ctr.*, Civ. No. 18-00475 JMS-RT, Order (1) Granting Defendant HDRC's Motion for Summary Judgment, ECF No. 74; and (2) Denying Plaintiff Bassett's Motion for Summary Judgment, ECF No. 73.